# EXHIBIT 5



(Oil and Gas)

## 09   1589    CREEK COUNTY, OKLAHOMA

### MORTGAGE WITH POWER OF SALE, SECURITY AGREEMENT, ASSIGNMENT AND FINANCING STATEMENT

FROM

**TUSCANY ENERGY, LLC**

TO

**BENEFIT BANK**

Dated effective January 30, 2009

JANELL DIEHL, COUNTY CLERK
STATE OF OKLAHOMA COUNTY OF CREEK
This Instrument Was Filed For Record ON

**FEB 1 2 2009**

At *10* o'clock *A* M AND RECORDED IN
BOOK *689* PAGE *747-69*
BY _____ DEPUTY

---

**A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE.  A POWER OF SALE MAY ALLOW THE BANK TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY MORTGAGOR UNDER THIS MORTGAGE.**

THIS INSTRUMENT CONTAINS AFTER-ACQUIRED PROPERTY PROVISIONS.    THIS INSTRUMENT SECURES PAYMENT OF FUTURE ADVANCES.   THE OIL AND GAS INTERESTS INCLUDED IN THE MORTGAGED PROPERTIES WILL BE FINANCED AT THE WELLHEADS OF THE WELLS LOCATED ON THE PROPERTIES DESCRIBED IN EXHIBIT "A" HERETO, AND THIS AMENDED AND RESTATED MORTGAGE WITH POWER OF SALE, SECURITY AGREEMENT, ASSIGNMENT AND FINANCING STATEMENT IS TO BE FILED FOR RECORD, AMONG OTHER PLACES, IN THE REAL ESTATE RECORDS.

This instrument was prepared by and the recorded counterparts should be returned to:

> McAfee & Taft
> A Professional Corporation
> c/o Robert T. Luttrell, III, Esq.
> 10th Floor, Two Leadership Square
> 211 North Robinson
> Oklahoma City, OK  73102

**747**

MORTGAGE WITH POWER OF SALE, SECURITY AGREEMENT,
ASSIGNMENT AND FINANCING STATEMENT

THIS MORTGAGE WITH POWER OF SALE, SECURITY AGREEMENT, ASSIGNMENT AND FINANCING STATEMENT dated effective as of January 30, 2009 (this "**Mortgage**") is from TUSCANY ENERGY, LLC, an Oklahoma limited liability company, having a mailing address of 1314 E. Las Olas Boulevard, No. 224, Fort Lauderdale, Florida 33301 (hereinafter referred to as "**Mortgagor**") to BENEFIT BANK (the "**Bank**"), having a mailing address of P.O. Box 10750, Fort Smith, Arkansas 72917-0750, with respect to the following circumstances:

   I.  Mortgagor, as borrower, and the Bank, as lender, have entered into a Loan Agreement dated as of the date of this Mortgage (as same may be amended, modified, supplemented, restated, replaced, renewed, and/or extended from time to time, the "**Loan Agreement**"), pursuant to which the Bank has agreed to loan certain amounts to Borrower, and Borrower, to evidence its indebtedness to the Bank under the Loan Agreement, has executed and delivered to the Bank that certain Promissory Note, dated as of the date of this Mortgage, in the stated principal amount of $5,000,000 (as they may be amended, modified, supplemented, restated, replaced, renewed, extended and/or increased from time to time, the "**New Note**"). The New Note is payable to the order of the Bank (or other holder thereof) and bears interest at the rates provided for therein, and contains provisions for payment of attorneys' fees and acceleration of maturity in the event of default.

   II.  The Bank, IDC Palm Energy, LLC, a Delaware limited liability company ("**IDCPE**"), Tuscany Oil and Gas, LLC, an Oklahoma limited liability company ("**TOG**"), Mortgagor, Integrated Data Corp., a Delaware corporation, and Jack E. Wheeler have entered into a Loan Assumption Agreement dated as of the date hereof (as the same may be amended, modified, supplemented, restated, replaced, renewed, and/or extended from time to time, the "**Loan Assumption Agreement**"), pursuant to which the Bank has agreed to permit IDCPE to assume TOG's obligations as the borrower under a loan from the Bank to TOG, and such loan is evidenced by that certain Promissory Note, dated as of December 27, 2007, in the stated principal amount of $5,000,000 (such note, as it may be amended, modified, supplemented, restated, replaced, renewed, extended and/or increased from time to time, is hereinafter referred to as the "**Assumed Note**," and together with the New Note, the "**Notes**"). The Assumed Note is payable to the order of the Bank (or other holder thereof) and bears interest at the rates provided for therein, and contains provisions for payment of attorneys' fees and acceleration of maturity in the event of default.

   III.  Mortgagor is an affiliate of IDCPE, and as such, Mortgagor will derive substantial benefits from the loans contemplated by the Loan Assumption Agreement and has agreed to execute and deliver this Mortgage to secure the obligations of IDCPE under the Loan Assumption Agreement and the Loan Documents. As used in this Mortgage, the term "**Loan Documents**" includes any document defined as a "**Loan Document**" in either the Loan Agreement or the Loan Assumption Agreement.

**748**

IV.    The Bank would not make the loans contemplated by the Loan Agreement and the Loan Assumption Agreement unless Mortgagor executes and delivers this Mortgage to the Bank.

NOW, THEREFORE, for good and adequate consideration, the receipt of which is hereby acknowledged, and to secure to the Bank the payment of the "**Secured Indebtedness**" (as that term is hereinafter defined) and the performance of the covenants and agreements contained in the Loan Documents, Mortgagor does hereby grant, bargain, sell, convey and mortgage unto the Bank the following described property (sometimes hereinafter individually and collectively referred to as the "**Mortgaged Properties**"), whether now or hereafter acquired and owned by Mortgagor in the name of Mortgagor or in the name of a nominee or other agent for Mortgagor:

A.    all of Mortgagor's right, title and interest in the oil wells and gas wells described at Exhibit A attached hereto and made a part hereof (hereinafter individually and collectively called the "**Wells**");

B.    all of Mortgagor's right, title and interest in the oil, gas, casinghead gas, condensate and other liquid or gaseous hydrocarbons (sometimes hereinafter individually and collectively called the "**Hydrocarbons**") now or hereafter underlying, produced or severed from, stored at, or attributable to, all or any portion of the lands described at Exhibit A and/or lands, spaced, pooled and/or unitized with such lands;

C.    all of Mortgagor's right, title and interest in the oil, gas and mineral leases, and pooling, unitization, communitization and similar orders of governmental bodies or authorities covering, all or any portion of the lands described at Exhibit A (sometimes hereinafter individually and collectively called the "**Leases**");

D.    all of Mortgagor's right, title and interest in and to the lands described in the Leases and the lands spaced, pooled and/or unitized therewith (sometimes hereinafter individually and collectively called the "**Lands**");

E.    all of Mortgagor's right, title and interest in and to all wells, salt water injection wells, water supply wells, casing, tubing, pumping units, rods, flow lines, pipe lines, poles, lines, compressors, motors, engines, tanks, separators, pumping units, heater treaters, fittings, machinery, tools, tanks, equipment, buildings, structures, supplies, inventories, and all other goods, chattels, business records, documents of title, and all other items of real property, personal property and fixtures now or hereafter located at, under, or upon, or used in connection with, the Lands, the Leases, the Wells and/or the Hydrocarbons  (sometimes hereinafter individually and collectively called the "**Properties**");

F.    all of Mortgagor's right, title and interest in and to production sale contracts, operating agreements, farmout agreements, proceeds from the sale of the Hydrocarbons and the Properties, subleases, assignments, choses in action, causes of action, contract rights, chattel paper, insurance policies and proceeds, accounts, general intangibles, licenses, files, records, rights-of-way, easements, and any and all other contracts, agreements, and rights related to the Wells, the Leases, the Hydrocarbons, the Properties, and/or the Lands (sometimes hereinafter individually and collectively called the "**Agreements**"); and **749**

3877808_2.DOC

G.      all rights, additions, improvements, appurtenances and accessions to, products and replacements of, proceeds from or attributable to, and substitutions for, whether now or hereafter in anywise belonging or appertaining to, any one or more of the properties, assets, interests and rights described at subparagraph A., B., C., D., E., and/or F. immediately above.

TO HAVE AND TO HOLD the Mortgaged Properties unto the Bank, forever, to secure payment of the Secured Indebtedness as hereinafter described.

The expression "**Mortgagor's successors**," as used herein, shall mean each of Mortgagor's successors and assigns. Mortgagor hereby binds itself and Mortgagor's successors to warrant and forever defend, all and singular the Mortgaged Properties, unto the Bank, its successors, and to its and their assigns, forever, against every person and entity whomsoever now or hereafter claiming same or any part thereof.

For the considerations stated in this Mortgage, as respects that portion of the Mortgaged Properties that now or hereafter, consist of (i) equipment, general intangibles, accounts, instruments, documents, chattel paper, contract rights, inventory, fixtures, proceeds or products of collateral (as such terms are defined in the Uniform Commercial Code as in effect in the appropriate jurisdiction with respect to said properties, rights and interests) and/or (ii) any other personal property or fixture of a kind or character subject to the applicable provisions of the Uniform Commercial Code (as in effect in the appropriate jurisdiction with respect to each of said properties, rights and interests), Mortgagor hereby grants to the Bank a security interest in all such now owned or hereafter acquired properties, rights and interests to secure the payment of the "**Secured Indebtedness**" (as that term is defined in Section 1.1) and the performance of the obligations of Mortgagor contained in this Mortgage, the Loan Agreement or in any other Loan Document.

Mortgagor, in consideration of the foregoing premises and to induce the Bank to make the loans described above, hereby covenants and agrees with the Bank as follows:

## ARTICLE I.

### INDEBTEDNESS SECURED

1.1    Secured Indebtedness.  This Mortgage is given to secure Mortgagor's obligations under the Loan Agreement and the other Loan Documents, and all of the following indebtedness and all amendments, extensions, renewals, modifications, rearrangements or increases of any of the following indebtedness (the "**Secured Indebtedness**"):

(a)      Notes.  The indebtedness evidenced by and payable according to the terms of the Notes.

(b)      Other Indebtedness.  All indebtedness incurred or arising pursuant to the provisions of the Loan Agreement, the Loan Assumption Agreement, this Mortgage and/or any other Loan Document.

(c)      Future Indebtedness.  All extensions or renewals of all indebtedness described in Section 1.1(a) and Section 1.1(b) above, and all loans and advances which the Bank may hereafter make to Mortgagor or IDCPE, and all other and additional debts, obligations and

750

4

liabilities of every kind and character of Mortgagor or IDCPE now or hereafter existing in favor of the Bank, regardless of whether such debts, obligations or liabilities are direct or indirect, primary or secondary, joint, several, fixed or contingent, and irrespective of the manner in which same may be incurred and regardless of whether such present or future debts, obligations and liabilities may, prior to their acquisition by the Bank, are or have been payable to or in favor of, some other person or entity, or have been acquired by the Bank in a transaction with anyone other than Mortgagor or IDCPE, together with any and all renewals and extensions of such indebtedness, loans, advances, debts, obligations and liabilities, or any part thereof, and all interest, attorneys' fees, and other charges thereof, or incurred in connection therewith, it being contemplated by Mortgagor and the Bank that the Bank may from time to time make additional loans and future advances hereunder. Any additional loan or advance made hereunder may be made without notice to or without the consent of anyone bound by this Mortgage, other than the person or party to whom the advance or loan is made, but nothing contained herein shall impose upon the Bank the duty or obligation to make any additional loan or advance.

        (d)    Guaranty. All obligations of Mortgagor under the Guaranty.

        (e)    Tuscany Energy. All obligations of IDCPE and TOG to the Bank of whatsoever nature now existing, all loans and advances which the Bank may hereafter make to IDCPE, and all other and additional debts, obligations and liabilities of every kind and character of IDCPE now or hereafter existing in favor of the Bank, regardless of whether such debts, obligations or liabilities are direct or indirect, primary or secondary, joint, several, fixed or contingent, and irrespective of the manner in which same may be incurred and regardless of whether such present or future debts, obligations and liabilities may, prior to their acquisition by the Bank, are or have been payable to or in favor of, some other person or entity, or have been acquired by the Bank in a transaction with anyone other than IDCPE, together with any and all renewals and extensions of such indebtedness, loans, advances, debts, obligations and liabilities, or any part thereof, and all interest, attorneys' fees, and other charges thereof, or incurred in connection therewith, it being contemplated by Mortgagor's and the Bank that the Bank may from time to time make additional loans and future advances to IDCPE. Any additional loan or advance made to IDCPE may be made without notice to or without the consent of anyone bound by this Mortgage, other than the person or party to whom the advance or loan is made, but nothing contained herein shall impose upon the Bank the duty or obligation to make any additional loan or advance

        1.2    Payment of Indebtedness. Mortgagor will duly and punctually pay or cause to be paid the indebtedness described in this Article I, including each and every obligation owing on account of the Notes, in accordance with the terms of the Loan Agreement, the Loan Assumption Agreement and the Notes.

## ARTICLE II.

## REPRESENTATIONS AND WARRANTIES

        Mortgagor represents and warrants to the Bank as follows:

        2.1    Existence and Power. Mortgagor is a validly existing limited liability company in good standing under Oklahoma law. Mortgagor has adequate power, authority and legal right to

**751**

own, operate and possess the Mortgaged Properties, and to grant, sell, transfer and mortgage, and grant a security interest in, the Mortgaged Properties. Mortgagor is duly authorized, qualified and licensed under all applicable laws to carry on Mortgagor's business at the locations where Mortgagor conducts such business, and operate and own the Mortgaged Properties. The execution, delivery and performance of this Mortgage by Mortgagor will not violate any applicable law, rule, regulation, ordinance, judgment or order, the provisions of Mortgagor's Articles of Organization or Operating Agreement, or any other agreement or instrument binding upon Mortgagor, or applicable to, affecting or covering the Mortgaged Properties.

2.2    Title. Mortgagor has good and defensible title to the Mortgaged Properties subject to minor defects of title, none of which have a material adverse effect on the Mortgaged Property so affected thereby, and none of which will prevent or delay payment of revenue generated from the Mortgaged Properties to Mortgagor. The Mortgaged Properties are free and clear of all Liens, whatsoever, except Permitted Liens and Permitted Encumbrances, and no financing statement covering any of the Mortgaged Properties is on file in any public office. As respects each Well, Mortgagor (by virtue of its ownership in the Leases) is entitled to receive free and clear of any Title Defects, from the date hereof throughout the remaining duration of the productive life of such Well, the decimal share of the oil, gas and other hydrocarbons produced from, or allocated to, such Well, which is not less than the decimal set forth at Exhibit A in the column titled "Net Revenue Interest" for such Well. As respects each Well, Mortgagor's ownership of the Properties associated with such Well (by virtue of its ownership in the Leases) is as of the date hereof and, based on existing conditions, will remain throughout the remaining duration of the productive life of the Well at least that undivided decimal interest set forth at Exhibit A in the column titled "Working Interest" for such Well, free and clear of any Title Defects. As respects each Well, Mortgagor is obligated from the date hereof and, based on existing conditions, will remain obligated throughout the remaining duration of the productive life of the Well, to bear a decimal share of all costs relating to the operation of such Well that is not more than the decimal interest set forth at Exhibit A in the column titled "Working Interest" for such Well (unless there is at least the same corresponding proportional increase in Mortgagor's net revenue interest in such Well).

2.3    Validity and Effectiveness of Leases. The Leases are valid, subsisting, in full force and effect, and are superior and paramount to all other oil, gas and mineral leases covering the same undivided mineral interests in the Lands. All rents and royalties due and payable thereunder, and all severance and production taxes payable with respect to the production therefrom, have been duly paid.

2.4    Compliance with Laws. Mortgagor's ownership, use and operation of its assets and properties comply in all material respects with any and all applicable federal, state and local laws, statutes, rules, regulations, ordinances and orders.

## ARTICLE III.

### ADDITIONAL COVENANTS

Mortgagor further covenants and promises to the Bank as follows:

**752**

6

3.1    Defense Against Claims. If the validity or priority of this Mortgage, or of any rights, title, liens or interests created or evidenced hereby with respect to the Mortgaged Properties, or any part thereof, are endangered, questioned or attacked, directly or indirectly, or if any legal proceedings are instituted against Mortgagor in respect thereto, Mortgagor will give written notice thereof to the Bank and, at Mortgagor's own cost and expense, Mortgagor will diligently endeavor to cure any defects that may be developed or claimed and will take all necessary and proper steps for the defense of such legal proceedings, including, but not limited to, the employment of counsel, the prosecution or defense of litigation, and the release or discharge of all adverse claims. The Bank is hereby authorized and empowered to take such additional steps as in the Bank's judgment or discretion may be necessary or proper in the defense of such legal proceedings, including, but not limited to, the employment of independent counsel, the prosecution or defense of litigation, and the compromise or discharge of any adverse claims made with respect to the Mortgaged Properties. All expenses so incurred of every kind and character will be a demand obligation owing by Mortgagor and will bear interest from the date of expenditure until paid at the highest rate applicable under the Notes during the existence of a default (the "**Default Rate**"), and will be secured by the lien and security interest evidenced by this Mortgage. The party incurring such expense shall be subrogated to all rights of the person receiving such payment. The above and foregoing covenants will at all times be construed to be covenants for the benefit of the Bank and will remain in full force and effect, notwithstanding the assignment hereof or the payment of all the Secured Indebtedness and the release, either partially or wholly, of the lien hereof or any foreclosure thereof.

3.2    Payment of Debt.    Mortgagor will make prompt payment of the Secured Indebtedness as the same becomes due.

3.3    Sale, Encumbrance or Removal.  Except as may otherwise be provided in the Loan Agreement, Mortgagor will not at any time during the existence of this Mortgage, without first obtaining the Bank's prior written consent, sell, assign, transfer, mortgage, encumber, or otherwise dispose of any of the Mortgaged Properties, except sales of oil, gas, casinghead gas, condensate or other hydrocarbons in the ordinary course of business and only then in compliance with the terms of this Mortgage, or remove or permit to be removed, any personal or other removable property at any time covered hereby from the premises upon which the same may be situated, except in the ordinary course of business.

3.4    Extensions and Substitutions.  By agreement with the maker or makers of any instrument evidencing any indebtedness at any time secured hereby, the Bank, without notice to or consent of any other party to this Mortgage, may from time to time extend the time of payment of the whole or any part of the Secured Indebtedness, or may accept from said maker or makers one or more new instruments in the same or different form in renewal of or by way of substitution for any instrument of indebtedness without in any manner impairing or affecting the lien and security interest of this Mortgage or any of the Bank's rights hereunder.

3.5    Preservation of Mortgaged Properties.  Mortgagor will keep and maintain all Properties, or cause all Properties to be kept and maintained, in good repair and sufficient operating condition including the making of all necessary repairs, renewals, replacements, additions and improvements. Mortgagor will not commit or suffer to be committed any waste of the Mortgaged Properties or permit any lien or encumbrance of any kind or character, except in favor of the Bank, to accrue or remain on the Mortgaged Properties or any part thereof. **753**

3.6    Operation.  Mortgagor will operate the Mortgaged Properties, or will cause the Mortgaged Properties to be operated, in a good and workmanlike manner in accordance with all applicable laws, and the applicable provisions of the Leases and the Agreements.

3.7    Compliance with Leases and Agreements.  Mortgagor will comply with all of the terms, covenants and provisions, express or implied, of the Leases and the Agreements, and perform all reasonable acts necessary or proper to prevent the termination or forfeiture of any Lease.  Except with the prior written consent of the Bank, Mortgagor will not amend any material provision of or terminate any of the Agreements or surrender, abandon or release any of the Leases in whole or in part so long as any Well located in any unit containing all or any part of such Leases is capable of producing Hydrocarbons in paying or commercial quantities.  Mortgagor will promptly discharge all obligations which it has to the holders of royalty and overriding royalty interests and all other interests in the Leases and other Mortgaged Properties.

3.8    Taxes.  Mortgagor will pay, or cause to be paid, before delinquent, all taxes, assessments and other governmental charges of every kind and character now or hereafter levied, imposed or assessed against the Mortgaged Properties, or any party thereof, or which might become a lien thereon, including all such as may be incident to the operation, development or maintenance of said property, or the production of oil, gas, casinghead gas or other hydrocarbons therefrom, in accordance with the terms of the Loan Agreement.

3.9    Debts.  Mortgagor will pay or cause to be paid all debts and liabilities of Mortgagor of any character in accordance with the terms of the Loan Agreement.

3.10    Books and Records.  Mortgagor will keep accurate books and records in accordance with sound accounting principles, in which full, true and correct entries shall be promptly made as to all operations on the Mortgaged Properties.  All such books and records will at all times during reasonable business hours be subject to inspection by the Bank and the Bank's duly accredited representatives.  Whenever reasonably requested by the Bank, Mortgagor will make reports of operations in such form as the Bank prescribes, setting out full data as to production and revenues from the Mortgaged Properties.

3.11    Indemnification.  Mortgagor will indemnify and hold the Bank harmless from and against all claims, demands, liabilities and causes of action asserted against the Bank on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Mortgaged Properties, this Mortgage or any of the Secured Indebtedness, except for the Bank's willful misconduct or gross negligence.

3.12    Additional Documents.  Whenever requested by the Bank, Mortgagor will promptly execute and deliver or cause to be executed and delivered all such other and further instruments, documents or assurances (including transfer orders, division orders and all such other documents as may from time to time be required by pipe line companies or other purchasing parties) and will promptly do or cause to be done all such other and further things as may by the Bank be deemed necessary, expedient or advisable in order to better and more fully preserve or vest in the Bank all rights, interests, powers, benefits, privileges and advantages conferred or intended to be conferred by this Mortgage, or by any other instrument delivered simultaneously or pursuant hereto.

**754**

3.13    <u>Insurance</u>.  Mortgagor shall maintain at least the types and policy amounts of insurance currently maintained by Mortgagor.

3.14    <u>Condemnation Awards</u>.  If at any time all or any portion of the Mortgaged Properties is taken or damaged under the power of eminent domain, the award received by condemnation proceedings for any property so taken or any payment received in lieu of such condemnation proceedings shall be paid directly to the Bank as agent for Mortgagor.  All or any portion of such award or payment, at the option of the Bank, will be applied to the Secured Indebtedness in payment of the last maturing installments of the Secured Indebtedness or will be paid over, wholly or in part, to Mortgagor for any purpose or object satisfactory to the Bank, provided that the Bank will not be obligated to see to the application of any amount paid over to Mortgagor.  Mortgagor, immediately upon obtaining knowledge of the institution of any proceedings or negotiations for the condemnation of the Mortgaged Properties, or any portion thereof, will notify the Bank of the pendency of such negotiations or proceedings.  The Bank may participate in any such negotiations or proceedings, and Mortgagor from time to time will execute and deliver to the Bank all instruments requested by the Bank to permit such participation.

3.15    <u>Inspection; Management</u>.  The Bank and any persons authorized by the Bank will have the right to enter and inspect the Mortgaged Properties at all reasonable times.  If at any time after default by Mortgagor in the performance of any of the terms, covenants or provisions of the Loan Agreement, this Mortgage, the Note or any other Loan Document, the management or maintenance of the Mortgaged Properties is determined by the Bank to be unsatisfactory, Mortgagor will employ, for the duration of such default, as managing agent of the Mortgaged Properties, any person from time to time reasonably designated or approved by the Bank.

3.16    <u>Compliance by Other Owners</u>.  Mortgagor shall take all reasonable action and exercise all rights and remedies that are available to Mortgagor to cause any and all of the Mortgaged Properties which are not operated by Mortgagor to comply with the covenants and agreements contained herein.

3.17    <u>Optional Performance by the Bank</u>.  If Mortgagor fails to perform any act or fails to take any action that such Mortgagor is required to perform or take hereunder or under any other Loan Document, or fails to pay any money that such Mortgagor is required to pay hereunder or under any other Loan Document, the Bank, in such Mortgagor's name or in the Bank's name, may perform (but will not be obligated to perform or cause to be performed) such act or take such action or pay such money.  Any expenses so incurred by the Bank and any money so paid by the Bank will be a demand obligation owing by Mortgagor, will bear interest from the date of making such payment until paid at the Default Rate, will be a part of the Secured Indebtedness and will be secured by this Mortgage and by any other instrument securing the Secured Indebtedness.  The Bank, upon making such payment, will be subrogated to all of the rights of the Person receiving such payment.

3.18    <u>Release of Mortgaged Properties</u>.  Except as specifically provided in the Loan Agreement, the Bank will not be required to release any of the Mortgaged Properties until all of the Secured Indebtedness has been paid in full.  The Mortgaged Properties are hereby pledged to secure the total aggregate indebtedness and obligations of Mortgagor in favor of the Bank whether such indebtedness or obligations are now existing or hereafter incurred.  On the occurrence of an Event

**755**

9

of Default under the Loan Agreement or an event of default described in Article V of this Mortgage, the Bank may look to the Mortgaged Properties as collateral security for such other indebtedness and proceed to exercise the Bank's rights to the remedies provided in the Loan Agreement or any other Loan Document, including, but not limited to, the remedies described in this Mortgage.

## ARTICLE IV.

ASSIGNMENT OF PRODUCTION

4.1    Assignment.  For the purpose of additionally securing the payment of all of the Secured Indebtedness and to facilitate the discharge of all of the Secured Indebtedness, and as cumulative of any and all rights herein provided for, Mortgagor hereby warrants, bargains, conveys, sells, transfers, assigns, sets over and delivers unto the Bank all oil, gas, casinghead gas and other hydrocarbons produced from or allocated to the Mortgaged Properties which accrue on and after the date hereof to Mortgagor's interest in the Mortgaged Properties and all proceeds from the sales thereof, and all accounts and contract rights under which such proceeds may arise, all such accounts and contract rights and proceeds being hereinafter referred to as the "**Proceeds of Production**."

4.2    Payment to the Bank.  Mortgagor directs and instructs any and all purchasers of oil, gas, casinghead gas and other hydrocarbons produced or to be produced from or allocated to the Mortgaged Properties to pay directly to the Bank all of the Proceeds of Production accruing to Mortgagor's interest in the Mortgaged Properties until such time as such purchasers have been furnished with evidence that all of the Secured Indebtedness has been paid and that the liens and security interests evidenced hereby have been released.  Mortgagor authorizes the Bank to receive and collect all sums of money derived from the Proceeds of Production assigned hereunder, and no purchaser of the production attributed to the Mortgaged Properties shall have any responsibility for the application of any funds paid to the Bank.  The receipt by the Bank of monies so paid to the Bank will be a full and complete release, discharge and acquittance to any purchaser to the extent of all sums so paid.  This Mortgage is and constitutes full and complete authority to or for any purchasers of any of the oil, gas, casinghead gas and other hydrocarbons produced from or allocated to said Mortgaged Properties, or any other Person liable therefor, to make payment to the Bank of Mortgagor's proportionate part of the Proceeds of Production.  The office where the records of Mortgagor are kept with respect to the accounts and contract rights concerning the Mortgaged Properties is located at the address shown at Section 7.4 hereof, and Mortgagor agrees that the place where such records are kept will not be changed without prior written notification to the Bank.  Upon reasonable request by the Bank, Mortgagor will provide the Bank with copies of all such records.

4.3    Trust Funds.  If under any existing sales agreements, other than division orders or transfer orders, any Proceeds of Production are required to be paid by the purchaser to Mortgagor, so that under such existing agreements, payment cannot be made of such proceeds to the Bank, Mortgagor's interest in all Proceeds of Production under such sales agreements and all other Proceeds of Production which may be paid to Mortgagor for any reason will, upon written request by Bank to Mortgagor, constitute trust funds in Mortgagor's hands when received by Mortgagor and will be paid over immediately to the Bank.

**756**

10

4.4    Change of Connection.  Should any Person now or hereafter purchasing or taking oil, gas, casinghead gas and other hydrocarbons attributed to the Mortgaged Properties, or allocated thereto, fail to make payment promptly to the Bank of the Proceeds of Production following written request by Bank to any such Person, the Bank will have the right to make or require Mortgagor to make a change of connection as respects the interests of Mortgagor and will have the right to designate or approve the purchaser with whose facilities a new connection shall be made, without liability or responsibility in connection therewith so long as ordinary care is used in making such designations.  Mortgagor shall pay to the Bank, on demand in writing from the Bank, the amount of any Proceeds of Production not promptly paid to the Bank by any person having responsibility therefor.

4.5    Optional Payment to Mortgagor.    Notwithstanding anything to the contrary contained in Sections 4.1 and 4.2, the Bank hereby authorizes and directs (subject to revocation as provided in this Mortgage) each purchaser of oil, gas, casinghead gas or other hydrocarbons produced from or allocated to the Mortgaged Properties to make payment of the Proceeds of Production to Mortgagor unless and until such purchaser shall receive written notice from Bank to the effect that further payments of such Proceeds of Production shall be discontinued whereupon, from and after the date of receipt of such notice, all payments by such purchaser of the Proceeds of Production shall be made directly to Bank as otherwise provided in this Article IV.  The payment of the Proceeds of Production to Mortgagor as aforesaid will not affect or impair the Bank's right thereafter to retain in full all such payments or in anywise impair or affect the lien or security interest of this Mortgage and the priority thereof or any of the Bank's rights hereunder or the amount of the Secured Indebtedness.

4.6    No Liability for Collection.  The Bank is hereby absolved from any liability for failure to enforce collection of Proceeds of Production and all other responsibility in connection therewith, except the responsibility to account to Mortgagor for funds actually received.  Mortgagor will indemnify and hold the Bank harmless from any and all liabilities, actions, claims, judgments, costs, expenses, charges and attorneys' fees by reason of the assertion that the Bank received, either before or after the payment in full of the Secured Indebtedness, funds from the production of oil, gas, casinghead gas and other hydrocarbons claimed by third Persons.  The Bank will have the right to defend against any such claims or actions, employing attorneys of the Bank's selection.  If the Bank is not furnished with indemnity satisfactory to the Bank, the Bank will have the right to compromise and adjust any such claims and actions, and judgments rendered in connection therewith.  In addition to the right of indemnity as herein provided, all amounts paid by the Bank in compromise, satisfaction or discharge of any such claim, action or judgment, and all court costs, attorneys' fees and other expenses of every character incurred by the Bank pursuant to the provisions of this Section 4.6 will (i) be a demand obligation owing by Mortgagor, (ii) bear interest from date of expenditure until paid at the Default Rate, (iii) be part of the Secured Indebtedness, and (iv) be secured by this Mortgage and by any other instrument securing the Secured Indebtedness.  Nothing contained herein will in any manner be construed to limit or diminish any one or more of Mortgagor's liability according to the terms of the Loan Agreement, the Note, the other Loan Documents, or this Mortgage, nor to relieve Mortgagor from the performance of any of the covenants or obligations as set forth in this Mortgage, the Loan Agreement, the Note, the other Loan Documents, or any other agreements creating or securing the Secured Indebtedness.

757

4.7    Personal Obligation.    Nothing herein contained shall detract from or limit the absolute obligation of Mortgagor to make prompt payment of all Secured Indebtedness when and as the same becomes due regardless of whether the Proceeds of Production herein assigned are sufficient to pay the same, and the rights of this assignment shall be cumulative of all other security of any and every character now or hereafter existing to secure the payment of the Secured Indebtedness.

## ARTICLE V.

### DEFAULT

Either of the terms "**default**" or "**event of default**" as used in this Mortgage will mean the occurrence of any of the following events:

5.1    Nonpayment.    The failure of Mortgagor to make due and punctual payment of the Secured Indebtedness or of any installment of principal or interest or any part thereof, as the same become due and payable.

5.2    Failure to Pay Proceeds.    The failure of Mortgagor to pay over to the Bank within five (5) days after receipt of written demand, any proceeds from the sale of the oil, gas, casinghead gas or other hydrocarbons produced, saved and sold from or allocated to the Mortgaged Properties, which are paid to Mortgagor rather than to the Bank.

5.3    Breach of Provision.    The failure of Mortgagor to timely and properly observe, keep or perform any covenant, agreement or condition provided in this Mortgage or any other Loan Document required to be observed, kept or performed and such failure is not corrected within 30 days after Mortgagor's receipt of written notice of such failure from the Bank.

5.4    Failure of Mortgage Lien.    If the lien and priority of this Mortgage are not fully maintained at all times, or if Mortgagor is found or adjudged not to be lawfully seized of any right, title, interest or estate herein covenanted or warranted to be held or owned by Mortgagor, or if Mortgagor is found or adjudged not to have good right and lawful authority to encumber the Mortgaged Properties or any part thereof, as herein provided, or if the lien of this Mortgage ceases to be prior to any other lien in or covering any of the Mortgaged Properties, except a Permitted Lien.

5.5    Breach of Warranty.    Any representation or warranty made by Mortgagor in this Mortgage or any of the other Loan Documents is untrue in any respect.

5.6    Event of Default.    The occurrence of any Event of Default under any Loan Document.

## ARTICLE VI.

### REMEDIES AND RELATED PROVISIONS

Upon the occurrence of a default or an event of default, the Bank will have the option of declaring all of the Secured Indebtedness to be immediately due and payable, and the Bank will have any and all of the following remedies:

**758**

6.1    Repossession.  The Bank may take possession of the Mortgaged Properties or any part thereof (Mortgagor agreeing to give immediate peaceable possession to the Bank or the Bank's designee) and collect and maintain, operate or control the same, and may apply all or any part of the income and proceeds to the payment of any development, operation or maintenance expense incident to any order of application as the Bank may elect; provided that in the event of any dispute or question whatsoever concerning such income and proceeds or the application thereof, the Bank may hold the same in a special account without interest until such dispute or question is finally settled to the Bank's satisfaction.  If the Bank elects to collect such income and proceeds, this Mortgage will constitute full and complete authority to any purchaser of oil, gas, casinghead gas or other hydrocarbons from the Mortgaged Properties or allocated thereto, or any part thereof, to deliver directly to the Bank all proceeds from the sale of such products, and notice hereof, without the requirement of anything more, will constitute an unqualified order on such purchaser to make such delivery.  Every such purchaser is hereby authorized and directed to accept as sufficient the Bank's written statement to the effect that a default or an event of default has occurred hereunder and that the Bank is entitled to such proceeds; and every such purchaser is hereby relieved from all responsibility with respect to the delivery of said proceeds or the Bank's application thereof.

6.2    Judicial Foreclosure.  The Bank may institute suit to foreclose the lien of this Mortgage in any court having jurisdiction.  In any such suit, the Bank may, at the Bank's option, apply for and shall be entitled, as a matter of right, to the appointment of a receiver to take possession and control of, operate, maintain and preserve the Mortgaged Properties or any part thereof, including the production and sale of all oil, gas, casinghead gas and other hydrocarbons, and to apply the proceeds from the sale of all such hydrocarbons to the Secured Indebtedness until the Secured Indebtedness and all costs are fully paid; and the receiver may be authorized to sell or dispose of all or any part of the Mortgaged Properties under orders of the court appointing such receiver.  In the event of any foreclosure sale conducted pursuant to judicial proceedings, the Mortgaged Properties or any part thereof may be sold with or without appraisement as the Bank may elect, and such election may be exercised at any time prior to the entry of the decree of foreclosure.  If the Bank elects to have the Mortgaged Properties sold without appraisement, then Mortgagor hereby expressly waives appraisement.  The Bank may elect to have the Mortgaged Properties sold together or in separate parcels, and Mortgagor waives any and all rights which Mortgagor may have to insist on sale of the Mortgaged Properties in one unit or in separate parcels. If the highest bidder at any such sale becomes the purchaser, free of any right of Mortgagor to redeem or repurchase the Mortgaged Properties, the proceeds from such sale, after paying therefrom the costs advanced or incurred by the Bank in the foreclosure suit, including the costs of sale and any costs and expenses incurred in the operation of said property by a receiver appointed upon the application of the Bank, will be applied FIRST to the payment of all costs and expenses incurred by the Bank in the Bank's operation of the Mortgaged Properties, if the same are so operated, and to the payment of any and all sums advanced by the Bank for the purpose of protecting the security, together with accrued but unpaid interest thereon at the Default Rate; SECOND to the payment of the Secured Indebtedness and other sums then secured hereby, including interest and attorneys' fees, and THIRD to such other Persons in order of their priority as provided by law.

6.3    Power of Sale Foreclosure.  Mortgagor hereby confers on the Bank the power to sell the Mortgaged Property and the interests of persons therein in the manner provided for in the "Oklahoma Power of Sale Mortgage Foreclosure Act" (46 Okla. Stat. §§41 et seq.), as the same may be amended from time to time (the "**Act**"), or other applicable statutory authority.  Such power

13

**759**

of sale shall be exercised by giving Mortgagor a notice of intent to foreclose by power of sale and setting forth, among other things, the nature of the breach(es) or default(s) and the action required to effect a cure thereof and the time period within which such cure may be effected all in compliance with and as may be required by the Act and or other applicable statutory authority. If no cure is effected within the applicable statutory time limits, Bank may accelerate the Secured Indebtedness without further notice (the aforementioned statutory cure period shall run concurrently with any contractual provision for notice and cure period before acceleration of the Secured Indebtedness) and may then proceed in the manner and subject to and as required by the conditions of the Act or other applicable statutory authority to serve upon Mortgagor and other necessary parties and publish a notice of sale and to then sell and convey all or any portion of the Mortgaged Properties all in accordance with the Act or other applicable statutory authority. The sale shall be made as an entirety or in lots, parcels, or divisions, upon such notice, at such time and place, in such manner and under such conditions all as provided for in said Act or other applicable statutory authority. The proceeds of the sale shall be applied in the manner provided for in the Act or other applicable statutory authority. No action of the Bank based upon the provisions contained herein or contained in the Act, including, without limitation, the giving of the notice of intent to foreclose by power of sale or service of the notice of sale, shall constitute an election of remedies which would preclude the Bank from pursuing judicial foreclosure before or at any time after commencement of the power of sale foreclosure procedure.

6.4    Remedies Cumulative.  All remedies expressly provided for in this Mortgage are cumulative of any and all other remedies existing at law or in equity; and the Bank, in addition to the remedies herein provided, will be entitled to avail itself of all such other remedies as may now or hereafter exist at law or in equity for the collection of the Secured Indebtedness and for the enforcement of the covenants herein. The foreclosure of the liens evidenced hereby and the resort to any remedy provided for hereunder or provided for by law or equity shall not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies.

6.5    Other Security.  The Bank may resort to any security given by this Mortgage or to any other security now existing or hereafter given to secure the payment of the Secured Indebtedness in whole or in part and in such portions and in such order as may seem best to the Bank, in the Bank's sole and uncontrolled discretion. Any failure by the Bank to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof will not be deemed to be a waiver of any of the terms and provisions hereof; and the Bank, notwithstanding any such failure, will have the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions of this Mortgage to be performed by Mortgagor. Neither Mortgagor nor any other Person now or hereafter obligated for the payment of the whole or any part of the Secured Indebtedness will be relieved of such obligation by reason of (i) the failure of the Bank to comply with any request of Mortgagor or of any other Person so obligated to take action to foreclose this Mortgage or otherwise enforce any of the provisions of this Mortgage or of any obligations secured by this Mortgage, (ii) the release, regardless of consideration, of the whole or any part of the security held for the Secured Indebtedness, (iii) any agreement or stipulation between any subsequent owner or owners of the Mortgaged Properties, or (iv) the Bank's extension, from time to time, of the time of payment or modification of the terms of the Mortgage without first having obtained the consent of Mortgagor or such other Person. In the latter event, Mortgagor and all such other Persons shall continue to be liable to make such payments according to the terms of any such agreement of extension or modification unless expressly released and discharged in writing by the Bank. Regardless of consideration, and without the necessity for any notice to or consent by the **760**

holder of any subordinate lien on the Mortgaged Properties, the Bank may release the obligation of anyone at any time liable for any part of the Secured Indebtedness or any part of the security held for the Secured Indebtedness and may from time to time extend the time of payment or otherwise modify the terms of the Mortgage without, as to the security for the remainder thereof, in any way impairing or affecting the lien of this Mortgage or the priority of such lien over any subordinate lien, as security for the payment of the Secured Indebtedness.  The holder of any subordinate lien will have no right to terminate any lease affecting the Mortgaged Properties, whether or not such lease is subordinate to this Mortgage.

## ARTICLE VII.

## OTHER PROVISIONS

7.1     Security Interest.  This Mortgage is intended to constitute a security agreement with respect to the Mortgaged Properties and is also intended to constitute a financing statement under the Oklahoma Uniform Commercial Code, and a fixture filing.  This Mortgage shall cover all of the collateral described in this Mortgage and all proceeds of the collateral.  This Mortgage is to be filed for record, among other places, in the real estate records of each county in which the Lands described in Exhibit A hereto, or any part thereof, are situated, and, when filed in such counties, shall be effective as a financing statement covering fixtures located on the Lands, and Hydrocarbons as and after they are extracted, and accounts arising from the sale of such extracted Hydrocarbons which are to be financed at the wellhead of each of the Wells located on the Lands.  A photographic or other reproduction of this instrument shall be sufficient as a financing statement.  The following information is accordingly included:

      (a)     the name of Mortgagor (debtor) is Tuscany Energy, LLC;

      (b)     the name of the Bank (secured party) is Benefit Bank;

      (c)     the address of the Bank (secured party) from which information may be obtained is P.O. Box 10750, Fort Smith, Arkansas 72917-0750;

      (d)     the mailing address of Mortgagor is 1314 E. Las Olas Boulevard, No. 224, Fort Lauderdale, Florida 33301;

      (e)     a description of the collateral is set forth in subparagraphs A. through G. inclusive following the granting clause beginning on page one of this Mortgage; and

      (f)     a legal description of the real estate to which the collateral is or may become fixed is set forth in Exhibit A hereto.

In addition to all other rights, powers, privileges and remedies, on the occurrence of one or more events of default as herein provided, or one or more Events of Default as provided in the Loan Agreement, the Bank shall be entitled to exercise all of the rights, powers, privileges and remedies available to a secured party upon default under the Oklahoma Uniform Commercial Code.

7.2     Waiver and Partial Release.  The Bank may at any time and from time to time in writing (i) waive compliance by Mortgagor with any covenant herein made by Mortgagor to the

761

extent and in the manner specified in such writing, (ii) consent to Mortgagor doing any act that Mortgagor is prohibited from doing under this Mortgage, or (iii) consent to Mortgagor failing to do any act which Mortgagor are required to do hereunder to the extent and in the manner specified in such writing. No such act will in any way impair the rights of the Bank hereunder, except to the extent specifically agreed to by the Bank in such writing. The lien and other security rights of the Bank hereunder will not be impaired by any indulgence, including but not limited to (i) any renewal, extension or modification which the Bank may grant with respect to any of the Secured Indebtedness, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which the Bank may grant in respect of any item of the Mortgaged Properties or any part thereof or interest therein or any of the Proceeds of Production, and (iii) any release or indulgence granted to any endorser, guarantor or surety of any of the Secured Indebtedness. To the extent the Mortgagor is a surety under this Mortgage, is al of the agreements contained in the Guaranty apply hereto as if fully set forth herein.

7.3    Possession Until Default; Defeasance. Unless a default specified in Article V hereof or an Event of Default in the Loan Agreement or any other Loan Document occurs and is continuing, Mortgagor will retain full possession of the Mortgaged Properties, except the Proceeds of Production as provided under Article IV hereof, and will manage, operate, develop and use the same and every part thereof, subject, however, to the terms and provisions of this Mortgage.

7.4    Notices. Any notice, request or demand will be served by first class registered or certified mail as follows:

|                          |                                       |
|--------------------------|---------------------------------------|
| Mortgagor/Debtor:        | Tuscany Energy, LLC                    |
|                          | 1314 E. Las Olas Boulevard, No. 224   |
|                          | Fort Lauderdale, Florida 33301        |
|                          | Attention: V. Ray Harlow              |
|                          |                                       |
| Bank/Secured Party:      | Benefit Bank                          |
|                          | PO Box 10780                          |
|                          | Fort Smith, Arkansas 72917-0750       |
|                          | Attention: James Wiggins              |

or at such address as either party designates for such purpose in a written notice to the other party hereto and shall be effective when deposited in the United States Mail, postage prepaid.

7.5    Binding Effect. All terms, conditions, covenants, warranties and agreements contained herein shall be binding on Mortgagor and Mortgagor's successors and assigns and shall be deemed to be covenants running with the estate or in the land; and all said provisions shall likewise inure to the benefit of the Bank and the successors and assigns of the Bank.

7.6    Severability. The invalidity of any provision or provisions hereof shall not in any way affect the remaining provisions of this Mortgage.

7.7    Counterparts. This Mortgage is executed in numerous counterparts, all of which are identical and each of the counterparts shall be deemed an original and all counterparts together shall constitute one and the same instrument.                    762

16

7.8    <u>Construction</u>. This Mortgage and the documents issued hereunder will be deemed to be a contract made under the Laws of the State of Oklahoma and will be construed in accordance with Oklahoma Laws. The descriptive headings of the paragraphs of this Mortgage are for convenience only and will not be used in the construction of the content of this Mortgage.

7.9    <u>Controlling Provisions</u>. This Mortgage is subject in all aspects to the Loan Agreement. If there is any direct conflict between any provision of this Mortgage and any provisions of the Loan Agreement, the provisions of the Loan Agreement shall control. Capitalized terms used herein which are defined in the Loan Agreement shall have the same meaning provided therein when used in this Mortgage, unless otherwise defined in this Mortgage.

IN WITNESS WHEREOF, this Mortgage has been executed and delivered as of the date first above written.

MORTGAGOR:

TUSCANY ENERGY, LLC

By_____
V. Ray Harlow, Manager


BANK:

BENEFIT BANK


By_____
James Wiggins, Regional President


**763**

17

3877808_2.DOC

7.8    <u>Construction</u>. This Mortgage and the documents issued hereunder will be deemed to be a contract made under the Laws of the State of Oklahoma and will be construed in accordance with Oklahoma Laws. The descriptive headings of the paragraphs of this Mortgage are for convenience only and will not be used in the construction of the content of this Mortgage.

7.9    <u>Controlling Provisions</u>. This Mortgage is subject in all aspects to the Loan Agreement. If there is any direct conflict between any provision of this Mortgage and any provisions of the Loan Agreement, the provisions of the Loan Agreement shall control. Capitalized terms used herein which are defined in the Loan Agreement shall have the same meaning provided therein when used in this Mortgage, unless otherwise defined in this Mortgage.

IN WITNESS WHEREOF, this Mortgage has been executed and delivered as of the date first above written.

MORTGAGOR:

TUSCANY ENERGY, LLC

By_____
     V. Ray Harlow, Manager

BANK:

BENEFIT BANK

By_____
     James Wiggins, Regional President

**764**

17

ACKNOWLEDGMENTS

STATE OF _Florida_ )
) ss:
COUNTY OF _Broward_ )

This instrument was acknowledged before me on _May 30_, 2009, by V. Ray Harlow, Manager of Tuscany Energy, LLC.

(Seal)

_[signature]_
Notary Public
My Commission Expires:
Commission #

> Notary Public State of Florida
> Yvonne Perez Nordseth
> My Commission DD672923
> Expires 07/06/2011

STATE OF _____ )
) ss:
COUNTY OF_____ )

This instrument was acknowledged before me on _____, 2009, by James Wiggins Regional President of Benefit Bank.

(Seal)

_____
Notary Public
My Commission Expires:_____
Commission #_____

765

18

3877808_2.DOC

## ACKNOWLEDGMENTS

STATE OF _____ )
                           ) ss:
COUNTY OF _____ )

    This instrument was acknowledged before me on _____, 2009, by V. Ray Harlow, Manager of Tuscany Energy, LLC.

(Seal)

                                _____
                                Notary Public
                                My Commission Expires:_____
                                Commission #_____


STATE OF _Oklahoma_ )
                    ) ss:
COUNTY OF _Oklahoma_ )

    This instrument was acknowledged before me on _Feb 4_, 2009, by James Wiggins Regional President of Benefit Bank.

(Seal)

                                _____
                                Notary Public
                                My Commission Expires:_____
                                Commission #_____

BEBE THOMPSON
Notary Public
State of Oklahoma
Commission # 08004009  Expires 04/05/12

**766**

18

**EXHIBIT A**

767

19

## EXHIBIT "A"

### LIST OF WELLS AND LEASES

### WATERFLOOD UNIT

### CREEK COUNTY, OKLAHOMA - EAST STROUD UNIT

| LEASEHOLD DESCRIPTION | TRACT | | SEC | TWN | RNG |
|---|---|---|---|---|---|
| N/2 N/2 NW/4 | Tract # 10 | 5 | 14N | 7E | |
| NE/4 NE/4 | Tract # 11 | | 6 | 14N | 7E |
| SE/4 NE/4 | Tract # 4 | | 31 | 15N | 7E |
| SE/4 NE/4 | Tract # 5 | | 31 | 15N | 7E |
| S/2 S/2 NE/4 | Tract # 1 | | 32 | 15N | 7E |
| S/2 SE/4 NW/4 & 7.5 Acres of NW/4 SE/4 NW/4 | Tract # 2 | | 32 | 15N | 7E |
| SW/4 NW/4 & W/2 | Tract # 3 | | 32 | 15N | 7E |
| E/2 SW/4 | Tract # 6 | | 32 | 15N | 7E |
| NW/4 SE/4 | Tract # 7 | | 32 | 15N | 7E |
| E/2 SE/4 | Tract # 8 | | 32 | 15N | 7E |
| NW/4 NE/4 of Section 5 & the SW/4 SE/4 | Tract # 9 | | 32 | 15N | 7E |

### LIST OF WELLS OUTSIDE OF WATERFLOOD UNIT

768

## CREEK COUNTY, OKLAHOMA

| WELL NAME | SECTION | TOWNSHIP | RANGE |
|---|---|---|---|
| BASKIN | 4 | 14N | 7E |
| MARTIN # 2 | 5 | 14N | 7E |
| WEBB # 2 | 5 | 14N | 7E |
| TWISTED FORK | 7 | 14N | 7E |
| ADA WEBB # 2 | 8 | 14N | 7E |
| DEMING # 1 | 9 | 14N | 7E |
| DEMING # 2 | 9 | 14N | 7E |
| ALEAHA # 16-1 | 16 | 14N | 7E |
| ELIAS MAPP # 2 | 16 | 14N | 7E |
| ELIAS MAPP # 4 SWD | 16 | 14N | 7E |
| ANTHIS "A" | 34 | 14N | 8E |
| ANTHIS "B" | 35 | 14N | 8E |
| SHANNON # 1 | 33 | 15N | 7E |
| SHANNON # 3 SWD | 33 | 15N | 7E |
| VIKING # 1 | 35 | 15N | 7E |
| JOHN-JOHN # 1 | 29 | 15N | 8E |
| JOHN-JOHN # 2 | 29 | 15N | 8E |
| JOHN-JOHN # 3 | 29 | 15N | 8E |
| JOHN-JOHN # 4 | 29 | 15N | 8E |
| HELTON # 1 | 1 | 15N | 9E |
| HELTON # 2 | 1 | 15N | 9E |
| HELTON # 3 | 1 | 15N | 9E |
| BEINFANG | 36 | 17N | 9E |
| CATES | 36 | 17N | 9E |
| PAULINE | 36 | 17N | 9E |
| GANN | 32 | 17N | 10E |
| KERNS # 1 | 32 | 17N | 10E |
| KERNS # 2 | 32 | 17N | 10E |
| KERNS # 3 SWD | 32 | 17N | 10E |
| KERNS # 4 | 32 | 17N | 10E |
| KERNS # 6 | 32 | 17N | 10E |
| KERNS # 9 | 32 | 17N | 10E |

769

BOOK 1831 PAGE 51

(Oil and Gas)

## LINCOLN COUNTY, OKLAHOMA

MORTGAGE WITH POWER OF SALE, SECURITY AGREEMENT,
ASSIGNMENT AND FINANCING STATEMENT

FROM

TUSCANY ENERGY, LLC

TO

BENEFIT BANK

FILED
Lincoln County, OK

FEB 12 2009 3.20pr

Debbie ~~~~~
COUNTY CLERK

C.Cleves, Deputy


COUNTY CLERK
OFFICIAL
SEAL
LINCOLN COUNTY, OKLA.

Dated effective January 30, 2009

**A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF
SALE MAY ALLOW THE BANK TO TAKE THE MORTGAGED PROPERTY AND
SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON
DEFAULT BY MORTGAGOR UNDER THIS MORTGAGE.**

THIS INSTRUMENT CONTAINS AFTER-ACQUIRED PROPERTY PROVISIONS. THIS
INSTRUMENT SECURES PAYMENT OF FUTURE ADVANCES. THE OIL AND GAS
INTERESTS INCLUDED IN THE MORTGAGED PROPERTIES WILL BE FINANCED AT
THE WELLHEADS OF THE WELLS LOCATED ON THE PROPERTIES DESCRIBED IN
EXHIBIT "A" HERETO, AND THIS AMENDED AND RESTATED MORTGAGE WITH
POWER OF SALE, SECURITY AGREEMENT, ASSIGNMENT AND FINANCING
STATEMENT IS TO BE FILED FOR RECORD, AMONG OTHER PLACES, IN THE REAL
ESTATE RECORDS.

This instrument was prepared by and the recorded counterparts should be returned to:

McAfee & Taft
A Professional Corporation
c/o Robert T. Luttrell, III, Esq.
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102

4011736_1.DOC

1

CONTINUED

BOOK 1831 PAGE 52

## MORTGAGE WITH POWER OF SALE, SECURITY AGREEMENT, ASSIGNMENT AND FINANCING STATEMENT

THIS MORTGAGE WITH POWER OF SALE, SECURITY AGREEMENT, ASSIGNMENT AND FINANCING STATEMENT dated effective as of January 30, 2009 (this "**Mortgage**") is from TUSCANY ENERGY, LLC, an Oklahoma limited liability company, having a mailing address of 1314 E. Las Olas Boulevard, No. 224, Fort Lauderdale, Florida 33301 (hereinafter referred to as "**Mortgagor**") to BENEFIT BANK (the "**Bank**"), having a mailing address of P.O. Box 10750, Fort Smith, Arkansas 72917-0750, with respect to the following circumstances:

I.      Mortgagor, as borrower, and the Bank, as lender, have entered into a Loan Agreement dated as of the date of this Mortgage (as same may be amended, modified, supplemented, restated, replaced, renewed, and/or extended from time to time, the "**Loan Agreement**"), pursuant to which the Bank has agreed to loan certain amounts to Borrower, and Borrower, to evidence its indebtedness to the Bank under the Loan Agreement, has executed and delivered to the Bank that certain Promissory Note, dated as of the date of this Mortgage, in the stated principal amount of $5,000,000 (as they may be amended, modified, supplemented, restated, replaced, renewed, extended and/or increased from time to time, the "**New Note**"). The New Note is payable to the order of the Bank (or other holder thereof) and bears interest at the rates provided for therein, and contains provisions for payment of attorneys' fees and acceleration of maturity in the event of default.

II.      The Bank, IDC Palm Energy, LLC, a Delaware limited liability company ("**IDCPE**"), Tuscany Oil and Gas, LLC, an Oklahoma limited liability company ("**TOG**"), Mortgagor, Integrated Data Corp., a Delaware corporation, and Jack E. Wheeler have entered into a Loan Assumption Agreement dated as of the date hereof (as the same may be amended, modified, supplemented, restated, replaced, renewed, and/or extended from time to time, the "**Loan Assumption Agreement**"), pursuant to which the Bank has agreed to permit IDCPE to assume TOG's obligations as the borrower under a loan from the Bank to TOG, and such loan is evidenced by that certain Promissory Note, dated as of December 27, 2007, in the stated principal amount of $5,000,000 (such note, as it may be amended, modified, supplemented, restated, replaced, renewed, extended and/or increased from time to time, is hereinafter referred to as the "**Assumed Note**," and together with the New Note, the "**Notes**"). The Assumed Note is payable to the order of the Bank (or other holder thereof) and bears interest at the rates provided for therein, and contains provisions for payment of attorneys' fees and acceleration of maturity in the event of default.

III.      Mortgagor is an affiliate of IDCPE, and as such, Mortgagor will derive substantial benefits from the loans contemplated by the Loan Assumption Agreement and has agreed to execute and deliver this Mortgage to secure the obligations of IDCPE under the Loan Assumption Agreement and the Loan Documents. As used in this Mortgage, the term "**Loan Documents**" includes any document defined as a "**Loan Document**" in either the Loan Agreement or the Loan Assumption Agreement.

4011736_1.DOC



BOOK 1831 PAGE    53

IV.    The Bank would not make the loans contemplated by the Loan Agreement and the Loan Assumption Agreement unless Mortgagor executes and delivers this Mortgage to the Bank.

NOW, THEREFORE, for good and adequate consideration, the receipt of which is hereby acknowledged, and to secure to the Bank the payment of the "**Secured Indebtedness**" (as that term is hereinafter defined) and the performance of the covenants and agreements contained in the Loan Documents, Mortgagor does hereby grant, bargain, sell, convey and mortgage unto the Bank the following described property (sometimes hereinafter individually and collectively referred to as the "**Mortgaged Properties**"), whether now or hereafter acquired and owned by Mortgagor in the name of Mortgagor or in the name of a nominee or other agent for Mortgagor:

A.    all of Mortgagor's right, title and interest in the oil wells and gas wells described at Exhibit A attached hereto and made a part hereof (hereinafter individually and collectively called the "**Wells**");

B.    all of Mortgagor's right, title and interest in the oil, gas, casinghead gas, condensate and other liquid or gaseous hydrocarbons (sometimes hereinafter individually and collectively called the "**Hydrocarbons**") now or hereafter underlying, produced or severed from, stored at, or attributable to, all or any portion of the lands described at Exhibit A and/or lands, spaced, pooled and/or unitized with such lands;

C.    all of Mortgagor's right, title and interest in the oil, gas and mineral leases, and pooling, unitization, communitization and similar orders of governmental bodies or authorities covering, all or any portion of the lands described at Exhibit A (sometimes hereinafter individually and collectively called the "**Leases**");

D.    all of Mortgagor's right, title and interest in and to the lands described in the Leases and the lands spaced, pooled and/or unitized therewith (sometimes hereinafter individually and collectively called the "**Lands**");

E.    all of Mortgagor's right, title and interest in and to all wells, salt water injection wells, water supply wells, casing, tubing, pumping units, rods, flow lines, pipe lines, poles, lines, compressors, motors, engines, tanks, separators, pumping units, heater treaters, fittings, machinery, tools, tanks, equipment, buildings, structures, supplies, inventories, and all other goods, chattels, business records, documents of title, and all other items of real property, personal property and fixtures now or hereafter located at, under, or upon, or used in connection with, the Lands, the Leases, the Wells and/or the Hydrocarbons  (sometimes hereinafter individually and collectively called the "**Properties**");

F.    all of Mortgagor's right, title and interest in and to production sale contracts, operating agreements, farmout agreements, proceeds from the sale of the Hydrocarbons and the Properties, subleases, assignments, choses in action, causes of action, contract rights, chattel paper, insurance policies and proceeds, accounts, general intangibles, licenses, files, records, rights-of-way, easements, and any and all other contracts, agreements, and rights related to the Wells, the Leases, the Hydrocarbons, the Properties, and/or the Lands (sometimes hereinafter individually and collectively called the "**Agreements**"); and

4011736_1.DOC


CONTINUED

BOOK 1831 PAGE 54

G.    all rights, additions, improvements, appurtenances and accessions to, products and replacements of, proceeds from or attributable to, and substitutions for, whether now or hereafter in anywise belonging or appertaining to, any one or more of the properties, assets, interests and rights described at subparagraph A., B., C., D., E., and/or F. immediately above.

TO HAVE AND TO HOLD the Mortgaged Properties unto the Bank, forever, to secure payment of the Secured Indebtedness as hereinafter described.

The expression "**Mortgagor's successors,**" as used herein, shall mean each of Mortgagor's successors and assigns. Mortgagor hereby binds itself and Mortgagor's successors to warrant and forever defend, all and singular the Mortgaged Properties, unto the Bank, its successors, and to its and their assigns, forever, against every person and entity whomsoever now or hereafter claiming same or any part thereof.

For the considerations stated in this Mortgage, as respects that portion of the Mortgaged Properties that now or hereafter, consist of (i) equipment, general intangibles, accounts, instruments, documents, chattel paper, contract rights, inventory, fixtures, proceeds or products of collateral (as such terms are defined in the Uniform Commercial Code as in effect in the appropriate jurisdiction with respect to said properties, rights and interests) and/or (ii) any other personal property or fixture of a kind or character subject to the applicable provisions of the Uniform Commercial Code (as in effect in the appropriate jurisdiction with respect to each of said properties, rights and interests), Mortgagor hereby grants to the Bank a security interest in all such now owned or hereafter acquired properties, rights and interests to secure the payment of the "**Secured Indebtedness**" (as that term is defined in Section 1.1) and the performance of the obligations of Mortgagor contained in this Mortgage, the Loan Agreement or in any other Loan Document.

Mortgagor, in consideration of the foregoing premises and to induce the Bank to make the loans described above, hereby covenants and agrees with the Bank as follows:

## ARTICLE I.

## INDEBTEDNESS SECURED

1.1    Secured Indebtedness. This Mortgage is given to secure Mortgagor's obligations under the Loan Agreement and the other Loan Documents, and all of the following indebtedness and all amendments, extensions, renewals, modifications, rearrangements or increases of any of the following indebtedness (the "**Secured Indebtedness**"):

(a)    Notes. The indebtedness evidenced by and payable according to the terms of the Notes.

(b)    Other Indebtedness. All indebtedness incurred or arising pursuant to the provisions of the Loan Agreement, the Loan Assumption Agreement, this Mortgage and/or any other Loan Document.

(c)    Future Indebtedness. All extensions or renewals of all indebtedness described in Section 1.1(a) and Section 1.1(b) above, and all loans and advances which the Bank may hereafter make to Mortgagor or IDCPE, and all other and additional debts, obligations and

CONTINUED

BOOK 1831 PAGE 55

liabilities of every kind and character of Mortgagor or IDCPE now or hereafter existing in favor of the Bank, regardless of whether such debts, obligations or liabilities are direct or indirect, primary or secondary, joint, several, fixed or contingent, and irrespective of the manner in which same may be incurred and regardless of whether such present or future debts, obligations and liabilities may, prior to their acquisition by the Bank, are or have been payable to or in favor of, some other person or entity, or have been acquired by the Bank in a transaction with anyone other than Mortgagor or IDCPE, together with any and all renewals and extensions of such indebtedness, loans, advances, debts, obligations and liabilities, or any part thereof, and all interest, attorneys' fees, and other charges thereof, or incurred in connection therewith, it being contemplated by Mortgagor and the Bank that the Bank may from time to time make additional loans and future advances hereunder. Any additional loan or advance made hereunder may be made without notice to or without the consent of anyone bound by this Mortgage, other than the person or party to whom the advance or loan is made, but nothing contained herein shall impose upon the Bank the duty or obligation to make any additional loan or advance.

      (d)    <u>Guaranty</u>. All obligations of Mortgagor under the Guaranty.

      (e)    <u>Tuscany Energy</u>. All obligations of IDCPE and TOG to the Bank of whatsoever nature now existing, all loans and advances which the Bank may hereafter make to IDCPE, and all other and additional debts, obligations and liabilities of every kind and character of IDCPE now or hereafter existing in favor of the Bank, regardless of whether such debts, obligations or liabilities are direct or indirect, primary or secondary, joint, several, fixed or contingent, and irrespective of the manner in which same may be incurred and regardless of whether such present or future debts, obligations and liabilities may, prior to their acquisition by the Bank, are or have been payable to or in favor of, some other person or entity, or have been acquired by the Bank in a transaction with anyone other than IDCPE, together with any and all renewals and extensions of such indebtedness, loans, advances, debts, obligations and liabilities, or any part thereof, and all interest, attorneys' fees, and other charges thereof, or incurred in connection therewith, it being contemplated by Mortgagor's and the Bank that the Bank may from time to time make additional loans and future advances to IDCPE. Any additional loan or advance made to IDCPE may be made without notice to or without the consent of anyone bound by this Mortgage, other than the person or party to whom the advance or loan is made, but nothing contained herein shall impose upon the Bank the duty or obligation to make any additional loan or advance

      1.2    <u>Payment of Indebtedness</u>. Mortgagor will duly and punctually pay or cause to be paid the indebtedness described in this Article I, including each and every obligation owing on account of the Notes, in accordance with the terms of the Loan Agreement, the Loan Assumption Agreement and the Notes.

## ARTICLE II.

## REPRESENTATIONS AND WARRANTIES

      Mortgagor represents and warrants to the Bank as follows:

      2.1    <u>Existence and Power</u>. Mortgagor is a validly existing limited liability company in good standing under Oklahoma law. Mortgagor has adequate power, authority and legal right to

4011736_1.DOC



BOOK 1831 PAGE 56

own, operate and possess the Mortgaged Properties, and to grant, sell, transfer and mortgage, and grant a security interest in, the Mortgaged Properties. Mortgagor is duly authorized, qualified and licensed under all applicable laws to carry on Mortgagor's business at the locations where Mortgagor conducts such business, and operate and own the Mortgaged Properties. The execution, delivery and performance of this Mortgage by Mortgagor will not violate any applicable law, rule, regulation, ordinance, judgment or order, the provisions of Mortgagor's Articles of Organization or Operating Agreement, or any other agreement or instrument binding upon Mortgagor, or applicable to, affecting or covering the Mortgaged Properties.

2.2    Title. Mortgagor has good and defensible title to the Mortgaged Properties subject to minor defects of title, none of which have a material adverse effect on the Mortgaged Property so affected thereby, and none of which will prevent or delay payment of revenue generated from the Mortgaged Properties to Mortgagor. The Mortgaged Properties are free and clear of all Liens, whatsoever, except Permitted Liens and Permitted Encumbrances, and no financing statement covering any of the Mortgaged Properties is on file in any public office. As respects each Well, Mortgagor (by virtue of its ownership in the Leases) is entitled to receive free and clear of any Title Defects, from the date hereof throughout the remaining duration of the productive life of such Well, the decimal share of the oil, gas and other hydrocarbons produced from, or allocated to, such Well, which is not less than the decimal set forth at Exhibit A in the column titled "Net Revenue Interest" for such Well. As respects each Well, Mortgagor's ownership of the Properties associated with such Well (by virtue of its ownership in the Leases) is as of the date hereof and, based on existing conditions, will remain throughout the remaining duration of the productive life of the Well at least that undivided decimal interest set forth at Exhibit A in the column titled "Working Interest" for such Well, free and clear of any Title Defects. As respects each Well, Mortgagor is obligated from the date hereof and, based on existing conditions, will remain obligated throughout the remaining duration of the productive life of the Well, to bear a decimal share of all costs relating to the operation of such Well that is not more than the decimal interest set forth at Exhibit A in the column titled "Working Interest" for such Well (unless there is at least the same corresponding proportional increase in Mortgagor's net revenue interest in such Well).

2.3    Validity and Effectiveness of Leases. The Leases are valid, subsisting, in full force and effect, and are superior and paramount to all other oil, gas and mineral leases covering the same undivided mineral interests in the Lands. All rents and royalties due and payable thereunder, and all severance and production taxes payable with respect to the production therefrom, have been duly paid.

2.4    Compliance with Laws. Mortgagor's ownership, use and operation of its assets and properties comply in all material respects with any and all applicable federal, state and local laws, statutes, rules, regulations, ordinances and orders.

## ARTICLE III.

### ADDITIONAL COVENANTS

Mortgagor further covenants and promises to the Bank as follows:

4011736_1.DOC


CONTINUED

BOOK 1831 PAGE 57

3.1    Defense Against Claims.  If the validity or priority of this Mortgage, or of any rights, title, liens or interests created or evidenced hereby with respect to the Mortgaged Properties, or any part thereof, are endangered, questioned or attacked, directly or indirectly, or if any legal proceedings are instituted against Mortgagor in respect thereto, Mortgagor will give written notice thereof to the Bank and, at Mortgagor's own cost and expense, Mortgagor will diligently endeavor to cure any defects that may be developed or claimed and will take all necessary and proper steps for the defense of such legal proceedings, including, but not limited to, the employment of counsel, the prosecution or defense of litigation, and the release or discharge of all adverse claims.  The Bank is hereby authorized and empowered to take such additional steps as in the Bank's judgment or discretion may be necessary or proper in the defense of such legal proceedings, including, but not limited to, the employment of independent counsel, the prosecution or defense of litigation, and the compromise or discharge of any adverse claims made with respect to the Mortgaged Properties.  All expenses so incurred of every kind and character will be a demand obligation owing by Mortgagor and will bear interest from the date of expenditure until paid at the highest rate applicable under the Notes during the existence of a default (the "**Default Rate**"), and will be secured by the lien and security interest evidenced by this Mortgage.  The party incurring such expense shall be subrogated to all rights of the person receiving such payment.  The above and foregoing covenants will at all times be construed to be covenants for the benefit of the Bank and will remain in full force and effect, notwithstanding the assignment hereof or the payment of all the Secured Indebtedness and the release, either partially or wholly, of the lien hereof or any foreclosure thereof.

3.2    Payment of Debt.    Mortgagor will make prompt payment of the Secured Indebtedness as the same becomes due.

3.3    Sale, Encumbrance or Removal.  Except as may otherwise be provided in the Loan Agreement, Mortgagor will not at any time during the existence of this Mortgage, without first obtaining the Bank's prior written consent, sell, assign, transfer, mortgage, encumber, or otherwise dispose of any of the Mortgaged Properties, except sales of oil, gas, casinghead gas, condensate or other hydrocarbons in the ordinary course of business and only then in compliance with the terms of this Mortgage, or remove or permit to be removed, any personal or other removable property at any time covered hereby from the premises upon which the same may be situated, except in the ordinary course of business.

3.4    Extensions and Substitutions.  By agreement with the maker or makers of any instrument evidencing any indebtedness at any time secured hereby, the Bank, without notice to or consent of any other party to this Mortgage, may from time to time extend the time of payment of the whole or any part of the Secured Indebtedness, or may accept from said maker or makers one or more new instruments in the same or different form in renewal of or by way of substitution for any instrument of indebtedness without in any manner impairing or affecting the lien and security interest of this Mortgage or any of the Bank's rights hereunder.

3.5    Preservation of Mortgaged Properties.  Mortgagor will keep and maintain all Properties, or cause all Properties to be kept and maintained, in good repair and sufficient operating condition including the making of all necessary repairs, renewals, replacements, additions and improvements.  Mortgagor will not commit or suffer to be committed any waste of the Mortgaged Properties or permit any lien or encumbrance of any kind or character, except in favor of the Bank, to accrue or remain on the Mortgaged Properties or any part thereof.



CONTINUED

BOOK 1831 PAGE 58

3.6    Operation.  Mortgagor will operate the Mortgaged Properties, or will cause the Mortgaged Properties to be operated, in a good and workmanlike manner in accordance with all applicable laws, and the applicable provisions of the Leases and the Agreements.

3.7    Compliance with Leases and Agreements.  Mortgagor will comply with all of the terms, covenants and provisions, express or implied, of the Leases and the Agreements, and perform all reasonable acts necessary or proper to prevent the termination or forfeiture of any Lease.  Except with the prior written consent of the Bank, Mortgagor will not amend any material provision of or terminate any of the Agreements or surrender, abandon or release any of the Leases in whole or in part so long as any Well located in any unit containing all or any part of such Leases is capable of producing Hydrocarbons in paying or commercial quantities.  Mortgagor will promptly discharge all obligations which it has to the holders of royalty and overriding royalty interests and all other interests in the Leases and other Mortgaged Properties.

3.8    Taxes.  Mortgagor will pay, or cause to be paid, before delinquent, all taxes, assessments and other governmental charges of every kind and character now or hereafter levied, imposed or assessed against the Mortgaged Properties, or any party thereof, or which might become a lien thereon, including all such as may be incident to the operation, development or maintenance of said property, or the production of oil, gas, casinghead gas or other hydrocarbons therefrom, in accordance with the terms of the Loan Agreement.

3.9    Debts.  Mortgagor will pay or cause to be paid all debts and liabilities of Mortgagor of any character in accordance with the terms of the Loan Agreement.

3.10    Books and Records.  Mortgagor will keep accurate books and records in accordance with sound accounting principles, in which full, true and correct entries shall be promptly made as to all operations on the Mortgaged Properties.  All such books and records will at all times during reasonable business hours be subject to inspection by the Bank and the Bank's duly accredited representatives.  Whenever reasonably requested by the Bank, Mortgagor will make reports of operations in such form as the Bank prescribes, setting out full data as to production and revenues from the Mortgaged Properties.

3.11    Indemnification.  Mortgagor will indemnify and hold the Bank harmless from and against all claims, demands, liabilities and causes of action asserted against the Bank on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Mortgaged Properties, this Mortgage or any of the Secured Indebtedness, except for the Bank's willful misconduct or gross negligence.

3.12    Additional Documents.  Whenever requested by the Bank, Mortgagor will promptly execute and deliver or cause to be executed and delivered all such other and further instruments, documents or assurances (including transfer orders, division orders and all such other documents as may from time to time be required by pipe line companies or other purchasing parties) and will promptly do or cause to be done all such other and further things as may by the Bank be deemed necessary, expedient or advisable in order to better and more fully preserve or vest in the Bank all rights, interests, powers, benefits, privileges and advantages conferred or intended to be conferred by this Mortgage, or by any other instrument delivered simultaneously or pursuant hereto.

4011736_1.DOC



BOOK 18 3 1 PAGE    59

3.13    Insurance.  Mortgagor shall maintain at least the types and policy amounts of insurance currently maintained by Mortgagor.

3.14    Condemnation Awards.  If at any time all or any portion of the Mortgaged Properties is taken or damaged under the power of eminent domain, the award received by condemnation proceedings for any property so taken or any payment received in lieu of such condemnation proceedings shall be paid directly to the Bank as agent for Mortgagor.  All or any portion of such award or payment, at the option of the Bank, will be applied to the Secured Indebtedness in payment of the last maturing installments of the Secured Indebtedness or will be paid over, wholly or in part, to Mortgagor for any purpose or object satisfactory to the Bank, provided that the Bank will not be obligated to see to the application of any amount paid over to Mortgagor.  Mortgagor, immediately upon obtaining knowledge of the institution of any proceedings or negotiations for the condemnation of the Mortgaged Properties, or any portion thereof, will notify the Bank of the pendency of such negotiations or proceedings.  The Bank may participate in any such negotiations or proceedings, and Mortgagor from time to time will execute and deliver to the Bank all instruments requested by the Bank to permit such participation.

3.15    Inspection; Management.  The Bank and any persons authorized by the Bank will have the right to enter and inspect the Mortgaged Properties at all reasonable times.  If at any time after default by Mortgagor in the performance of any of the terms, covenants or provisions of the Loan Agreement, this Mortgage, the Note or any other Loan Document, the management or maintenance of the Mortgaged Properties is determined by the Bank to be unsatisfactory, Mortgagor will employ, for the duration of such default, as managing agent of the Mortgaged Properties, any person from time to time reasonably designated or approved by the Bank.

3.16    Compliance by Other Owners.  Mortgagor shall take all reasonable action and exercise all rights and remedies that are available to Mortgagor to cause any and all of the Mortgaged Properties which are not operated by Mortgagor to comply with the covenants and agreements contained herein.

3.17    Optional Performance by the Bank.  If Mortgagor fails to perform any act or fails to take any action that such Mortgagor is required to perform or take hereunder or under any other Loan Document, or fails to pay any money that such Mortgagor is required to pay hereunder or under any other Loan Document, the Bank, in such Mortgagor's name or in the Bank's name, may perform (but will not be obligated to perform or cause to be performed) such act or take such action or pay such money.  Any expenses so incurred by the Bank and any money so paid by the Bank will be a demand obligation owing by Mortgagor, will bear interest from the date of making such payment until paid at the Default Rate, will be a part of the Secured Indebtedness and will be secured by this Mortgage and by any other instrument securing the Secured Indebtedness.  The Bank, upon making such payment, will be subrogated to all of the rights of the Person receiving such payment.

3.18    Release of Mortgaged Properties.  Except as specifically provided in the Loan Agreement, the Bank will not be required to release any of the Mortgaged Properties until all of the Secured Indebtedness has been paid in full.  The Mortgaged Properties are hereby pledged to secure the total aggregate indebtedness and obligations of Mortgagor in favor of the Bank whether such indebtedness or obligations are now existing or hereafter incurred.  On the occurrence of an Event

9

CONTINUED

BOOK 1831 PAGE  60

of Default under the Loan Agreement or an event of default described in Article V of this Mortgage, the Bank may look to the Mortgaged Properties as collateral security for such other indebtedness and proceed to exercise the Bank's rights to the remedies provided in the Loan Agreement or any other Loan Document, including, but not limited to, the remedies described in this Mortgage.

## ARTICLE IV.

### ASSIGNMENT OF PRODUCTION

4.1      Assignment.  For the purpose of additionally securing the payment of all of the Secured Indebtedness and to facilitate the discharge of all of the Secured Indebtedness, and as cumulative of any and all rights herein provided for, Mortgagor hereby warrants, bargains, conveys, sells, transfers, assigns, sets over and delivers unto the Bank all oil, gas, casinghead gas and other hydrocarbons produced from or allocated to the Mortgaged Properties which accrue on and after the date hereof to Mortgagor's interest in the Mortgaged Properties and all proceeds from the sales thereof, and all accounts and contract rights under which such proceeds may arise, all such accounts and contract rights and proceeds being hereinafter referred to as the "**Proceeds of Production**."

4.2      Payment to the Bank.  Mortgagor directs and instructs any and all purchasers of oil, gas, casinghead gas and other hydrocarbons produced or to be produced from or allocated to the Mortgaged Properties to pay directly to the Bank all of the Proceeds of Production accruing to Mortgagor's interest in the Mortgaged Properties until such time as such purchasers have been furnished with evidence that all of the Secured Indebtedness has been paid and that the liens and security interests evidenced hereby have been released.  Mortgagor authorizes the Bank to receive and collect all sums of money derived from the Proceeds of Production assigned hereunder, and no purchaser of the production attributed to the Mortgaged Properties shall have any responsibility for the application of any funds paid to the Bank.  The receipt by the Bank of monies so paid to the Bank will be a full and complete release, discharge and acquittance to any purchaser to the extent of all sums so paid.  This Mortgage is and constitutes full and complete authority to or for any purchasers of any of the oil, gas, casinghead gas and other hydrocarbons produced from or allocated to said Mortgaged Properties, or any other Person liable therefor, to make payment to the Bank of Mortgagor's proportionate part of the Proceeds of Production.  The office where the records of Mortgagor are kept with respect to the accounts and contract rights concerning the Mortgaged Properties is located at the address shown at Section 7.4 hereof, and Mortgagor agrees that the place where such records are kept will not be changed without prior written notification to the Bank. Upon reasonable request by the Bank, Mortgagor will provide the Bank with copies of all such records.

4.3      Trust Funds.  If under any existing sales agreements, other than division orders or transfer orders, any Proceeds of Production are required to be paid by the purchaser to Mortgagor, so that under such existing agreements, payment cannot be made of such proceeds to the Bank, Mortgagor's interest in all Proceeds of Production under such sales agreements and all other Proceeds of Production which may be paid to Mortgagor for any reason will, upon written request by Bank to Mortgagor, constitute trust funds in Mortgagor's hands when received by Mortgagor and will be paid over immediately to the Bank.

10

CONTINUED

BOOK 1831 PAGE    61

4.4     Change of Connection.  Should any Person now or hereafter purchasing or taking oil, gas, casinghead gas and other hydrocarbons attributed to the Mortgaged Properties, or allocated thereto, fail to make payment promptly to the Bank of the Proceeds of Production following written request by Bank to any such Person, the Bank will have the right to make or require Mortgagor to make a change of connection as respects the interests of Mortgagor and will have the right to designate or approve the purchaser with whose facilities a new connection shall be made, without liability or responsibility in connection therewith so long as ordinary care is used in making such designations.  Mortgagor shall pay to the Bank, on demand in writing from the Bank, the amount of any Proceeds of Production not promptly paid to the Bank by any person having responsibility therefor.

4.5     Optional Payment to Mortgagor.   Notwithstanding anything to the contrary contained in Sections 4.1 and 4.2, the Bank hereby authorizes and directs (subject to revocation as provided in this Mortgage) each purchaser of oil, gas, casinghead gas or other hydrocarbons produced from or allocated to the Mortgaged Properties to make payment of the Proceeds of Production to Mortgagor unless and until such purchaser shall receive written notice from Bank to the effect that further payments of such Proceeds of Production shall be discontinued whereupon, from and after the date of receipt of such notice, all payments by such purchaser of the Proceeds of Production shall be made directly to Bank as otherwise provided in this Article IV.  The payment of the Proceeds of Production to Mortgagor as aforesaid will not affect or impair the Bank's right thereafter to retain in full all such payments or in anywise impair or affect the lien or security interest of this Mortgage and the priority thereof or any of the Bank's rights hereunder or the amount of the Secured Indebtedness.

4.6     No Liability for Collection.  The Bank is hereby absolved from any liability for failure to enforce collection of Proceeds of Production and all other responsibility in connection therewith, except the responsibility to account to Mortgagor for funds actually received.  Mortgagor will indemnify and hold the Bank harmless from any and all liabilities, actions, claims, judgments, costs, expenses, charges and attorneys' fees by reason of the assertion that the Bank received, either before or after the payment in full of the Secured Indebtedness, funds from the production of oil, gas, casinghead gas and other hydrocarbons claimed by third Persons.  The Bank will have the right to defend against any such claims or actions, employing attorneys of the Bank's selection.  If the Bank is not furnished with indemnity satisfactory to the Bank, the Bank will have the right to compromise and adjust any such claims and actions, and judgments rendered in connection therewith.  In addition to the right of indemnity as herein provided, all amounts paid by the Bank in compromise, satisfaction or discharge of any such claim, action or judgment, and all court costs, attorneys' fees and other expenses of every character incurred by the Bank pursuant to the provisions of this Section 4.6 will (i) be a demand obligation owing by Mortgagor, (ii) bear interest from date of expenditure until paid at the Default Rate, (iii) be part of the Secured Indebtedness, and (iv) be secured by this Mortgage and by any other instrument securing the Secured Indebtedness. Nothing contained herein will in any manner be construed to limit or diminish any one or more of Mortgagor's liability according to the terms of the Loan Agreement, the Note, the other Loan Documents, or this Mortgage, nor to relieve Mortgagor from the performance of any of the covenants or obligations as set forth in this Mortgage, the Loan Agreement, the Note, the other Loan Documents, or any other agreements creating or securing the Secured Indebtedness.

4011736_1.DOC

CONTINUED

BOOK 1831 PAGE   62

4.7    Personal Obligation.    Nothing herein contained shall detract from or limit the absolute obligation of Mortgagor to make prompt payment of all Secured Indebtedness when and as the same becomes due regardless of whether the Proceeds of Production herein assigned are sufficient to pay the same, and the rights of this assignment shall be cumulative of all other security of any and every character now or hereafter existing to secure the payment of the Secured Indebtedness.

## ARTICLE V.

### DEFAULT

Either of the terms "**default**" or "**event of default**" as used in this Mortgage will mean the occurrence of any of the following events:

5.1    Nonpayment.    The failure of Mortgagor to make due and punctual payment of the Secured Indebtedness or of any installment of principal or interest or any part thereof, as the same become due and payable.

5.2    Failure to Pay Proceeds.    The failure of Mortgagor to pay over to the Bank within five (5) days after receipt of written demand, any proceeds from the sale of the oil, gas, casinghead gas or other hydrocarbons produced, saved and sold from or allocated to the Mortgaged Properties, which are paid to Mortgagor rather than to the Bank.

5.3    Breach of Provision.    The failure of Mortgagor to timely and properly observe, keep or perform any covenant, agreement or condition provided in this Mortgage or any other Loan Document required to be observed, kept or performed and such failure is not corrected within 30 days after Mortgagor's receipt of written notice of such failure from the Bank.

5.4    Failure of Mortgage Lien.    If the lien and priority of this Mortgage are not fully maintained at all times, or if Mortgagor is found or adjudged not to be lawfully seized of any right, title, interest or estate herein covenanted or warranted to be held or owned by Mortgagor, or if Mortgagor is found or adjudged not to have good right and lawful authority to encumber the Mortgaged Properties or any part thereof, as herein provided, or if the lien of this Mortgage ceases to be prior to any other lien in or covering any of the Mortgaged Properties, except a Permitted Lien.

5.5    Breach of Warranty.    Any representation or warranty made by Mortgagor in this Mortgage or any of the other Loan Documents is untrue in any respect.

5.6    Event of Default.    The occurrence of any Event of Default under any Loan Document.

## ARTICLE VI.

### REMEDIES AND RELATED PROVISIONS

Upon the occurrence of a default or an event of default, the Bank will have the option of declaring all of the Secured Indebtedness to be immediately due and payable, and the Bank will have any and all of the following remedies:

12

4011736_1.DOC


CONTINUED

BOOK 1831 PAGE 63

6.1   Repossession.  The Bank may take possession of the Mortgaged Properties or any part thereof (Mortgagor agreeing to give immediate peaceable possession to the Bank or the Bank's designee) and collect and maintain, operate or control the same, and may apply all or any part of the income and proceeds to the payment of any development, operation or maintenance expense incident to any order of application as the Bank may elect; provided that in the event of any dispute or question whatsoever concerning such income and proceeds or the application thereof, the Bank may hold the same in a special account without interest until such dispute or question is finally settled to the Bank's satisfaction.  If the Bank elects to collect such income and proceeds, this Mortgage will constitute full and complete authority to any purchaser of oil, gas, casinghead gas or other hydrocarbons from the Mortgaged Properties or allocated thereto, or any part thereof, to deliver directly to the Bank all proceeds from the sale of such products, and notice hereof, without the requirement of anything more, will constitute an unqualified order on such purchaser to make such delivery.  Every such purchaser is hereby authorized and directed to accept as sufficient the Bank's written statement to the effect that a default or an event of default has occurred hereunder and that the Bank is entitled to such proceeds; and every such purchaser is hereby relieved from all responsibility with respect to the delivery of said proceeds or the Bank's application thereof.

6.2   Judicial Foreclosure.  The Bank may institute suit to foreclose the lien of this Mortgage in any court having jurisdiction.  In any such suit, the Bank may, at the Bank's option, apply for and shall be entitled, as a matter of right, to the appointment of a receiver to take possession and control of, operate, maintain and preserve the Mortgaged Properties or any part thereof, including the production and sale of all oil, gas, casinghead gas and other hydrocarbons, and to apply the proceeds from the sale of all such hydrocarbons to the Secured Indebtedness until the Secured Indebtedness and all costs are fully paid; and the receiver may be authorized to sell or dispose of all or any part of the Mortgaged Properties under orders of the court appointing such receiver.  In the event of any foreclosure sale conducted pursuant to judicial proceedings, the Mortgaged Properties or any part thereof may be sold with or without appraisement as the Bank may elect, and such election may be exercised at any time prior to the entry of the decree of foreclosure.  If the Bank elects to have the Mortgaged Properties sold without appraisement, then Mortgagor hereby expressly waives appraisement.  The Bank may elect to have the Mortgaged Properties sold together or in separate parcels, and Mortgagor waives any and all rights which Mortgagor may have to insist on sale of the Mortgaged Properties in one unit or in separate parcels.  If the highest bidder at any such sale becomes the purchaser, free of any right of Mortgagor to redeem or repurchase the Mortgaged Properties, the proceeds from such sale, after paying therefrom the costs advanced or incurred by the Bank in the foreclosure suit, including the costs of sale and any costs and expenses incurred in the operation of said property by a receiver appointed upon the application of the Bank, will be applied FIRST to the payment of all costs and expenses incurred by the Bank in the Bank's operation of the Mortgaged Properties, if the same are so operated, and to the payment of any and all sums advanced by the Bank for the purpose of protecting the security, together with accrued but unpaid interest thereon at the Default Rate; SECOND to the payment of the Secured Indebtedness and other sums then secured hereby, including interest and attorneys' fees, and THIRD to such other Persons in order of their priority as provided by law.

6.3   Power of Sale Foreclosure.  Mortgagor hereby confers on the Bank the power to sell the Mortgaged Property and the interests of persons therein in the manner provided for in the "Oklahoma Power of Sale Mortgage Foreclosure Act" (46 Okla. Stat. §§41 et seq.), as the same may be amended from time to time (the "**Act**"), or other applicable statutory authority.  Such power

13



of sale shall be exercised by giving Mortgagor a notice of intent to foreclose by power of sale and setting forth, among other things, the nature of the breach(es) or default(s) and the action required to effect a cure thereof and the time period within which such cure may be effected all in compliance with and as may be required by the Act and as may be required by the Act or other applicable statutory authority. If no cure is effected within the applicable statutory time limits, Bank may accelerate the Secured Indebtedness without further notice (the aforementioned statutory cure period shall run concurrently with any contractual provision for notice and cure period before acceleration of the Secured Indebtedness) and may then proceed in the manner and subject to and as required by the conditions of the Act or other applicable statutory authority to serve upon Mortgagor and other necessary parties and publish a notice of sale and to then sell and convey all or any portion of the Mortgaged Properties all in accordance with the Act or other applicable statutory authority. The sale shall be made as an entirety or in lots, parcels, or divisions, upon such notice, at such time and place, in such manner and under such conditions all as provided for in said Act or other applicable statutory authority. The proceeds of the sale shall be applied in the manner provided for in the Act or other applicable statutory authority. No action of the Bank based upon the provisions contained herein or contained in the Act, including, without limitation, the giving of the notice of intent to foreclose by power of sale or service of the notice of sale, shall constitute an election of remedies which would preclude the Bank from pursuing judicial foreclosure before or at any time after commencement of the power of sale foreclosure procedure.

6.4    Remedies Cumulative. All remedies expressly provided for in this Mortgage are cumulative of any and all other remedies existing at law or in equity; and the Bank, in addition to the remedies herein provided, will be entitled to avail itself of all such other remedies as may now or hereafter exist at law or in equity for the collection of the Secured Indebtedness and for the enforcement of the covenants herein. The foreclosure of the liens evidenced hereby and the resort to any remedy provided for hereunder or provided for by law or equity shall not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies.

6.5    Other Security. The Bank may resort to any security given by this Mortgage or to any other security now existing or hereafter given to secure the payment of the Secured Indebtedness in whole or in part and in such portions and in such order as may seem best to the Bank, in the Bank's sole and uncontrolled discretion. Any failure by the Bank to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof will not be deemed to be a waiver of any of the terms and provisions hereof; and the Bank, notwithstanding any such failure, will have the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions of this Mortgage to be performed by Mortgagor. Neither Mortgagor nor any other Person now or hereafter obligated for the payment of the whole or any part of the Secured Indebtedness will be relieved of such obligation by reason of (i) the failure of the Bank to comply with any request of Mortgagor or of any other Person so obligated to take action to foreclose this Mortgage or otherwise enforce any of the provisions of this Mortgage or of any obligations secured by this Mortgage, (ii) the release, regardless of consideration, of the whole or any part of the security held for the Secured Indebtedness, (iii) any agreement or stipulation between any subsequent owner or owners of the Mortgaged Properties, or (iv) the Bank's extension, from time to time, of the time of payment or modification of the terms of the Mortgage without first having obtained the consent of Mortgagor or such other Person. In the latter event, Mortgagor and all such other Persons shall continue to be liable to make such payments according to the terms of any such agreement of extension or modification unless expressly released and discharged in writing by the Bank. Regardless of consideration, and without the necessity for any notice to or consent by the

4011736_1.DOC

CONTINUED

BOOK 1831 PAGE 65

holder of any subordinate lien on the Mortgaged Properties, the Bank may release the obligation of anyone at any time liable for any part of the Secured Indebtedness or any part of the security held for the Secured Indebtedness and may from time to time extend the time of payment or otherwise modify the terms of the Mortgage without, as to the security for the remainder thereof, in any way impairing or affecting the lien of this Mortgage or the priority of such lien over any subordinate lien, as security for the payment of the Secured Indebtedness. The holder of any subordinate lien will have no right to terminate any lease affecting the Mortgaged Properties, whether or not such lease is subordinate to this Mortgage.

### ARTICLE VII.

### OTHER PROVISIONS

7.1     Security Interest. This Mortgage is intended to constitute a security agreement with respect to the Mortgaged Properties and is also intended to constitute a financing statement under the Oklahoma Uniform Commercial Code, and a fixture filing. This Mortgage shall cover all of the collateral described in this Mortgage and all proceeds of the collateral. This Mortgage is to be filed for record, among other places, in the real estate records of each county in which the Lands described in Exhibit A hereto, or any part thereof, are situated, and, when filed in such counties, shall be effective as a financing statement covering fixtures located on the Lands, and Hydrocarbons as and after they are extracted, and accounts arising from the sale of such extracted Hydrocarbons which are to be financed at the wellhead of each of the Wells located on the Lands. A photographic or other reproduction of this instrument shall be sufficient as a financing statement. The following information is accordingly included:

> (a)     the name of Mortgagor (debtor) is Tuscany Energy, LLC;

> (b)     the name of the Bank (secured party) is Benefit Bank;

> (c)     the address of the Bank (secured party) from which information may be obtained is P.O. Box 10750, Fort Smith, Arkansas 72917-0750;

> (d)     the mailing address of Mortgagor is 1314 E. Las Olas Boulevard, No. 224, Fort Lauderdale, Florida 33301;

> (e)     a description of the collateral is set forth in subparagraphs A. through G. inclusive following the granting clause beginning on page one of this Mortgage; and

> (f)     a legal description of the real estate to which the collateral is or may become fixed is set forth in Exhibit A hereto.

In addition to all other rights, powers, privileges and remedies, on the occurrence of one or more events of default as herein provided, or one or more Events of Default as provided in the Loan Agreement, the Bank shall be entitled to exercise all of the rights, powers, privileges and remedies available to a secured party upon default under the Oklahoma Uniform Commercial Code.

7.2     Waiver and Partial Release. The Bank may at any time and from time to time in writing (i) waive compliance by Mortgagor with any covenant herein made by Mortgagor to the

15



BOOK 1831 PAGE 66

extent and in the manner specified in such writing, (ii) consent to Mortgagor doing any act that Mortgagor is prohibited from doing under this Mortgage, or (iii) consent to Mortgagor failing to do any act which Mortgagor are required to do hereunder to the extent and in the manner specified in such writing. No such act will in any way impair the rights of the Bank hereunder, except to the extent specifically agreed to by the Bank in such writing. The lien and other security rights of the Bank hereunder will not be impaired by any indulgence, including but not limited to (i) any renewal, extension or modification which the Bank may grant with respect to any of the Secured Indebtedness, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which the Bank may grant in respect of any item of the Mortgaged Properties or any part thereof or interest therein or any of the Proceeds of Production, and (iii) any release or indulgence granted to any endorser, guarantor or surety of any of the Secured Indebtedness. To the extent the Mortgagor is a surety under this Mortgage, is al of the agreements contained in the Guaranty apply hereto as if fully set forth herein.

7.3    Possession Until Default; Defeasance. Unless a default specified in Article V hereof or an Event of Default in the Loan Agreement or any other Loan Document occurs and is continuing, Mortgagor will retain full possession of the Mortgaged Properties, except the Proceeds of Production as provided under Article IV hereof, and will manage, operate, develop and use the same and every part thereof, subject, however, to the terms and provisions of this Mortgage.

7.4    Notices. Any notice, request or demand will be served by first class registered or certified mail as follows:

> Mortgagor/Debtor:          Tuscany Energy, LLC
>                             1314 E. Las Olas Boulevard, No. 224
>                             Fort Lauderdale, Florida 33301
>                             Attention: V. Ray Harlow
>
> Bank/Secured Party:        Benefit Bank
>                             PO Box 10780
>                             Fort Smith, Arkansas 72917-0750
>                             Attention: James Wiggins

or at such address as either party designates for such purpose in a written notice to the other party hereto and shall be effective when deposited in the United States Mail, postage prepaid.

7.5    Binding Effect. All terms, conditions, covenants, warranties and agreements contained herein shall be binding on Mortgagor and Mortgagor's successors and assigns and shall be deemed to be covenants running with the estate or in the land; and all said provisions shall likewise inure to the benefit of the Bank and the successors and assigns of the Bank.

7.6    Severability. The invalidity of any provision or provisions hereof shall not in any way affect the remaining provisions of this Mortgage.

7.7    Counterparts. This Mortgage is executed in numerous counterparts, all of which are identical and each of the counterparts shall be deemed an original and all counterparts together shall constitute one and the same instrument.

16


CONTINUED

BOOK 1831 PAGE 67

7.8    Construction. This Mortgage and the documents issued hereunder will be deemed to be a contract made under the Laws of the State of Oklahoma and will be construed in accordance with Oklahoma Laws. The descriptive headings of the paragraphs of this Mortgage are for convenience only and will not be used in the construction of the content of this Mortgage.

7.9    Controlling Provisions. This Mortgage is subject in all aspects to the Loan Agreement. If there is any direct conflict between any provision of this Mortgage and any provisions of the Loan Agreement, the provisions of the Loan Agreement shall control. Capitalized terms used herein which are defined in the Loan Agreement shall have the same meaning provided therein when used in this Mortgage, unless otherwise defined in this Mortgage.

IN WITNESS WHEREOF, this Mortgage has been executed and delivered as of the date first above written.

MORTGAGOR:

TUSCANY ENERGY, LLC

By_____
    V. Ray Harlow, Manager


BANK:

BENEFIT BANK


By_____
    James Wiggins, Regional President

4011736_1.DOC



BOOK 1831 PAGE    68

7.8    Construction. This Mortgage and the documents issued hereunder will be deemed to be a contract made under the Laws of the State of Oklahoma and will be construed in accordance with Oklahoma Laws. The descriptive headings of the paragraphs of this Mortgage are for convenience only and will not be used in the construction of the content of this Mortgage.

7.9    Controlling Provisions. This Mortgage is subject in all aspects to the Loan Agreement. If there is any direct conflict between any provision of this Mortgage and any provisions of the Loan Agreement, the provisions of the Loan Agreement shall control. Capitalized terms used herein which are defined in the Loan Agreement shall have the same meaning provided therein when used in this Mortgage, unless otherwise defined in this Mortgage.

IN WITNESS WHEREOF, this Mortgage has been executed and delivered as of the date first above written.

MORTGAGOR:

TUSCANY ENERGY, LLC

By_____
    V. Ray Harlow, Manager

BANK:

BENEFIT BANK

By_____
    James Wiggins, Regional President

17

4011736_1.DOC


CONTINUED

BOOK 1831 PAGE    69

## ACKNOWLEDGMENTS

STATE OF _Oklahoma_ )
                            ) ss:
COUNTY OF _Oklahoma_ )

    This instrument was acknowledged before me on _Feb 3_ , 2009, by V. Ray Harlow, Manager of Tuscany Energy, LLC.

(Seal)

             **BEBE THOMPSON**
             Notary Public
             State of Oklahoma
Commission # 08004009 Expires 04/05/12

Notary Public
My Commission Expires:_____
Commission #_____


STATE OF _____ )
                            ) ss:
COUNTY OF _____ )

    This instrument was acknowledged before me on _____, 2009, by James Wiggins Regional President of Benefit Bank.

(Seal)

Notary Public
My Commission Expires:_____
Commission #_____



BOOK 1831 PAGE 70

ACKNOWLEDGMENTS

STATE OF _____          )
                                    ) ss:
COUNTY OF _____           )

    This instrument was acknowledged before me on _____, 2009, by V. Ray Harlow, Manager of Tuscany Energy, LLC.

(Seal)                              _____

                                    Notary Public
                                    My Commission Expires:_____
                                    Commission #_____

STATE OF Oklahoma         )
                          ) ss:
COUNTY OF Oklahoma        )

    This instrument was acknowledged before me on Feb 4, 2009, by James Wiggins Regional President of Benefit Bank.

(Seal)                              _____

                                    Notary Public
                                    My Commission Expires:_____
                                    Commission #_____

BEBE THOMPSON
Notary Public
State of Oklahoma
Commission # 08004009  Expires 04/05/12

4011736_1.DOC

CONTINUED

BOOK 1831 PAGE 71

**EXHIBIT A**

4011736_1.DOC



BOOK 1831 PAGE    72

## LIST OF WELLS AND LEASES

Attached to and made a part of that certain Assignment Bill of Sale and
Conveyance dated September 30, 2005, between Gordon Bros. Oil Co., et al and Tuscany
Oil and Gas, L.L.C. County of LINCOLN , State of OKLAHOMA to Wit:

| WELL NAME | LEGAL DESCRIPTION | SEC | TWN | RNG |
|---|---|---|---|---|
| MURVIN | NE/4 | 14 | 12N | 5E |
| ROLLER SWD | NE/4 | 14 | 12N | 5E |
| ROCK ISLAND #1 | E/2, NW/4 | 2 | 13N | 6E |
| MARTIN #7-1 | NE/4, SE/4 | 7 | 13N | 6E |
| COX #1, #3 | NW/4 | 28 | 14N | 4E |
| BERTHA TIPTON #1 | NW/4 | 4 | 14N | 5E |
| SPORLEADER #1 | SW/4 | 4 | 14N | 5E |
| CROSS #1-11 | SE/4 | 11 | 15N | 5E |
| OLDEN HOPKINS #1-14 | SE/4 | 14 | 14N | 5E |
| TIPTON #1, SWD | NE/4 | 24 | 14N | 5E |
| McDaniel #1-3 | E/2, SW/4 | 3 | 14N | 6E |
| GARRETT | NW/4 | 9 | 14N | 6E |
| BROOKS | SE/4 (less SW/4, SW/4 SE/4) | 14 | 14N | 6E |
| KENWORTHY "A" | SW/4 | 14 | 14N | 6E |
| KENWORTHY #3-D | SW/4 | 14 | 14N | 6E |
| LEBOW #2A | NE/4 | 27 | 14N | 6E |
| DORIS TERRY #1 | S/2, SE/4 | 9 | 14N | 6E |
| STATE SCHOOL LAND | SW/4 | 16 | 14N | 6E |
| PECAN FARMS #1 | SW/4 | 17 | 14N | 5E |
| PECAN FARMS #2 | SW/4 | 17 | 14N | 6E |
| ADAMS #3, #4 | NE/4 | 12 | 15N | 3E |
| MAGGIE HOPKINS #2 | NW/4 | 1 | 15N | 5E |
| FLORER #1 | SE/4 | 12 | 15N | 5E |
| LIVECY | NW/4 | 13 | 15N | 5E |
| COCKRUM #1-14 | SW/4 | 14 | 15N | 5E |
| SPORLEADER "A" #1 | SW/4 | 33 | 15N | 5E |
| MORROW #1 | NW/4, SE/4, NW/4 | 5 | 15N | 6E |
| EARP #6-1 | SE/4, NW/4 | 6 | 15N | 6E |

CONTINUED

CONTINUED

| Dingman #2 | NE/4 | | | 27 | 16N | 5E |
|---|---|---|---|---|---|---|
| MARY EARP #3, #5 | SE/4 | | | 6 | 15N | 6E |
| GALLOWAY #1-14 | SW/4 | | | 14 | 15N | 6E |
| GORDON | SE/4 | | | 32 | 15N | 6E |
| PLACE #1, #8-2 | NE/4 | | | 8 | 15N | 6E |
| PLACE "B" #9-1 | NW/4 | | | 9 | 15N | 6E |
| SANDITEN #1-20 | SE/4 | | | 20 | 15N | 6E |
| NICCUM #1-22 | SE/4 | | | 22 | 15N | 6E |
| BOND #13-1 | NW/4 | | | 13 | 16N | 6E |
| HASKIN #1 | SW/4 | | | 21 | 16N | 5E |
| RIEDE | SW/4 | | | 28 | 16N | 6E |
| TERRY #1-A | NE/4 | | | 31 | 16N | 6E |
| SILL #1 | NE/4 | | | 33 | 16N | 6E |
| CRENSHAW | SE/4 | | | 28 | 17N | 5E |
| MARRS #1, #2, #28-1 | SW/4 | | | 28 | 17N | 5E |
| McLAURY SWD | NE/4 | | | 33 | 17N | 5E |

**MIDLOTHIAN SKINNER SAND UNIT - LINCOLN COUNTY**

| LEASEHOLD DESCRIPTION | | SEC | TWN | RNG |
|---|---|---|---|---|
| W/2 NW/4 | TRACT # 5 | 2 | 14N | 3E |
| E/2 NW/4 | TRACT # 6 | 2 | 14N | 3E |
| N/2 NE/4 & SW/4 NE/4 | TRACT # 7 | 2 | 14N | 3E |
| NW/4 NW/4 SE/4 | TRACT # 8 | 2 | 14N | 3E |
| N/2 SW/4 | TRACT # 9 | 2 | 14N | 3E |
| SW/4 SW/4 | TRACT # 12 | 2 | 14N | 3E |
| NE/4 | TRACT # 4 | 3 | 14N | 3E |
| N/2 SE/4 | TRACT # 10 | 3 | 14N | 3E |
| SE/4 SE/4 SE/4 | TRACT # 11 | 3 | 14N | 3E |
| SE/4 SE/4 SE/4 | TRACT # 3 | 34 | 14N | 3E |
| S/2 SE/4 | TRACT # 1 | 35 | 14N | 3E |
| S/2 SW/4 | TRACT # 2 | 35 | 14N | 3E |

CONTINUED

CONTINUED

BOOK 1831 PAGE 74

## NW SAC & FOX PRUE SAND UNIT - LINCOLN COUNTY

| LEASEHOLD DESCRIPTION | | SEC | TWN | RNG |
|---|---|---|---|---|
| S/2 SE/4 NE/4 | TRACT #1 | 9 | 14N | 6E |
| N/2 NE/4 SE/4 & SE/4 NE/4 SE/4 | TRACT #6 | 9 | 14N | 6E |
| S/2 SE/4 SE/4 & NE/4 SE/4 SE/4 | TRACT #7 | 9 | 14N | 6E |
| S/2 S/2 NW/4 | TRACT #2 | 10 | 14N | 6E |
| SW/4 SW/4 NE/4 | TRACT #3 | 10 | 14N | 6E |
| W/2 NW/4 SE/4 | TRACT #4 | 10 | 14N | 6E |
| N/2 SW/4 | TRACT #5 | 10 | 14N | 6E |
| S/2 S/2 SE/4 & NE/4 SE/4 SE/4 & NW/4 SW/4 SE/4 & SW/4 SE/4 NW/4 | TRACT #9 | 10 | 14N | 6E |
| W/2 SW/4 SW/4 | TRACT #10 | 11 | 14N | 6E |
| W/2 W/2 NW/4 | TRACT #11 | 14 | 14N | 6E |
| N/ NW/4 SW/4 | TRACT #25 | 14 | 14N | 6E |
| S/2 SW/4 OF SEC 10 & N/2 NW/4 | TRACT #8 | 15 | 14N | 6E |
| NE/4 | TRACT #12 | 15 | 14N | 6E |
| N/2 N/2 SE/4 | TRACT #23 | 15 | 14N | 6E |
| W/2 SW/4 SE/4 | TRACT #24 | 15 | 14N | 6E |
| NE/4 SE/4 | TRACT #14 | 16 | 14N | 6E |
| E/2 NE/4 | TRACT #15 | 16 | 14N | 6E |
| E/2 W/2 NE/4 & SW/4 SW/4 NE/4 & 1/2 of NW/4 SW/4 NE/4 | TRACT #16 | 16 | 14N | 6E |
| W/2 SE/4 & E/2 SE/4 SW/4 & SW/4 SE/4 SW/4 & SE/4 SW/4 SW/4 | TRACT #17, #18 & #19 | 16 | 14N | 6E |
| NE/4 SW/4 NW/4 | TRACT #20 | 21 | 14N | 6E |
| N/2 NE/4 NW/4 | TRACT #21 | 21 | 14N | 6E |
| N/2 N/2 NE/4 & SE/4 NW/4 NE/4 | TRACT #22 | 21 | 14N | 6E |
| S/2 NW/4 & SW/4 of Sec 15 & SE/4 of Sec 16 & N/2 NW/4 NW/4 & SE/4 NW/4 | TRACT #13 | 22 | 14N | 6E |

CONTINUED

CONTINUED

BOOK 1831 PAGE 75

## SE SAC & FOX PRUE SAND UNIT - LINCOLN COUNTY

| LEASEHOLD DESCRIPTION | | SEC | TWN | RNG |
|---|---|---|---|---|
| SW/4 SW/4 SE/4 | TRACT #5 | 14 | 14N | 6E |
| SW/4 SW/4 & SE/4 | TRACT #8 | 14 | 14N | 6E |
| NW/4 SW/4 & W/2 | | | | |
| SE/4 SW/4 & SE/4 | | | | |
| SE/4 SW/4 | | | | |
| E/2 SW/4 SE/4 | TRACT #1 | 15 | 14N | 6E |
| SE/4 SE/4 & S/2 | TRACT #2 | 15 | 14N | 6E |
| NE/4 SE/4 & 5 | | | | |
| ACRES OF SE/4 | | | | |
| E/2 SE/4 NE/4 | TRACT #6 | 22 | 14N | 6E |
| & NW/4 SE/4 NE/4 | | | | |
| NE/4 NE/4 | TRACT #14 | 22 | 14N | 6E |
| NW/4 NE/4 | TRACT #15 | 22 | 14N | 6E |
| N/2 SW/4 NE/4 | TRACT #16 | 22 | 14N | 6E |
| NE/4 NW/4 SW/4 | TRACT #3 | 23 | 14N | 6E |
| NW/4 NE/4 SW/4 | TRACT #4 | 23 | 14N | 6E |
| NW/4 NE/4 & NW/4 | TRACT #7 | 23 | 14N | 6E |
| SW/4 NE/4 | | | | |
| SW/4 NW/4 | TRACT #9 | 23 | 14N | 6E |
| S/2 N/2 NW/4 | TRACT #10 | 23 | 14N | 6E |
| N/2 N/2 NW/4 | TRACT #11 | 23 | 14N | 6E |
| N/2 N/2 NW/4 | TRACT #12 | 23 | 14N | 6E |
| S/2 SE/4 NW/4 | TRACT #13 | 23 | 14N | 6E |

BOOK **1837** PAGE **305**



**(Surface)**

### LINCOLN COUNTY, OKLAHOMA

MORTGAGE WITH POWER OF SALE, SECURITY AGREEMENT,
ASSIGNMENT AND FINANCING STATEMENT

FROM

TUSCANY ENERGY, LLC

TO

BENEFIT BANK

Dated effective January 30, 2009

FILED
Lincoln County, OK

APR 0 1 2009 8:48am

COUNTY CLERK

O'Reilly, Deputy

TREASURER'S ENDORSEMENT
I hereby certify that I received $75.00 and issued receipt No. 1148
thereto in payment of mortgage tax on within mortgage. Dated this
_____ day of April 2009.
BABE MILAM, Lincoln County Treasurer
By _____ Deputy Cert. Fee $ 5.00

**A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF
SALE MAY ALLOW THE BANK TO TAKE THE MORTGAGED PROPERTY AND
SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON
DEFAULT BY MORTGAGOR UNDER THIS MORTGAGE.**

THIS INSTRUMENT CONTAINS AFTER-ACQUIRED PROPERTY PROVISIONS. THIS
INSTRUMENT SECURES PAYMENT OF FUTURE ADVANCES. THIS MORTGAGE WITH
POWER OF SALE, SECURITY AGREEMENT, ASSIGNMENT AND FINANCING
STATEMENT IS TO BE FILED FOR RECORD, AMONG OTHER PLACES, IN THE REAL
ESTATE RECORDS.

This instrument was prepared by and the recorded counterparts should be returned to:

> McAfee & Taft
> A Professional Corporation
> c/o Robert T. Luttrell, III, Esq.
> 10th Floor, Two Leadership Square
> 211 North Robinson
> Oklahoma City, OK 73102

**CONTINUED**

4007641_1.DOC

BOOK 1837 PAGE 306

## MORTGAGE WITH POWER OF SALE, SECURITY AGREEMENT, ASSIGNMENT AND FINANCING STATEMENT

THIS MORTGAGE WITH POWER OF SALE, SECURITY AGREEMENT, ASSIGNMENT AND FINANCING STATEMENT dated as of January 30, 2009 (this "**Mortgage**") is from TUSCANY ENERGY, LLC, an Oklahoma limited liability company ("**Mortgagor**"), having a mailing address of 1314 E. Las Olas Boulevard, No. 224, Fort Lauderdale, Florida 33301, to Benefit Bank (the "**Bank**"), having a mailing address of P.O. Box 10750, Fort Smith, Arkansas 72917-0750.

I.    Mortgagor, as Borrower, and the Bank, as Lender, have entered into a Loan Agreement dated as of the date of this Mortgage (as same may be amended, modified, supplemented, restated, replaced, renewed, and/or extended from time to time, the "**Loan Agreement**"), pursuant to which the Bank has agreed to loan certain amounts to Borrower, and Borrower, to evidence its indebtedness to the Bank under the Loan Agreement, has executed and delivered to the Bank that certain Promissory Note, dated as of the date of this Mortgage, (as they may be amended, modified, supplemented, restated, replaced, renewed, extended and/or increased from time to time, the "**New Note**"). The New Note is payable to the order of the Bank (or other holder thereof) and bears interest at the rates provided for therein, and contains provisions for payment of attorneys' fees and acceleration of maturity in the event of default.

II.    Lender, IDC Palm Energy, LLC, a Delaware limited liability company ("**IDCPE**"), Tuscany Oil and Gas, LLC, an Oklahoma limited liability company ("**TOG**"), Mortgagor, Integrated Data Corp., a Delaware corporation, and Jack E. Wheeler have entered into a Loan Assumption Agreement dated as of the date hereof (as the same may be amended, modified, supplemented, restated, replaced, renewed, and/or extended from time to time, the "**Loan Assumption Agreement**"), pursuant to which the Lender has agreed to permit IDCPE to assume TOG's obligations as the borrower under a loan from Lender to TOG, and such loan is evidenced by that certain Promissory Note, dated as of December 27, 2007, (such note, as it may be amended, modified, supplemented, restated, replaced, renewed, extended and/or increased from time to time, is hereinafter referred to as the "**Assumed Note**," and together with the New Note, the "**Notes**"). The Assumed Note is payable to the order of the Lender (or other holder thereof) and bears interest at the rates provided for therein, and contains provisions for payment of attorneys' fees and acceleration of maturity in the event of default.

III.    Mortgagor is an affiliate of IDCPE, and as such, Mortgagor will derive substantial benefits from the loans contemplated by the Loan Assumption Agreement and has agreed to execute and deliver this Mortgage to secure the obligations of IDCPE under the Loan Assumption Agreement and the Loan Documents. As used in this Mortgage, the term "**Loan Documents**" includes any document defined as a "**Loan Document**" in either the Loan Agreement or the Loan Assumption Agreement.

CONTINUED

BOOK 1837 PAGE 307

IV.    The Bank would not make the loans contemplated by the Loan Agreement and the Loan Assumption Agreement unless Mortgagor executes and delivers this Mortgage to the Bank.

NOW, THEREFORE, in consideration of the foregoing premises and for other good and adequate consideration, the receipt of which is hereby acknowledged, and to secure to the Bank the payment of the "Secured Indebtedness" (as that term is hereinafter defined) and the performance of the covenants and agreements contained in the Loan Documents, Mortgagor does hereby grant, bargain, sell, convey and mortgage unto the Bank all of Mortgagor's present and future estate, right, title and interest in and to the real property more particularly described on Exhibit A attached hereto (the "**Real Property**") including all of its right, title and interest in and to the following described property (together with the Real Property, the "**Mortgaged Properties**"), whether now or hereafter acquired and owned by Mortgagor in the name of Mortgagor or in the name of a nominee or other agent for Mortgagor:

A.    all right, title and interest of the Mortgagor in, to, under or derived from all buildings, structures, facilities and other improvements of every kind and description now or hereafter located on the Real Property, including all parking areas, roads, driveways, walks, fences, walls, drainage facilities and other site improvements, all water, sanitary and storm sewer, drainage, electricity, steam, gas, telephone and other utility equipment and facilities, all plumbing, lighting, heating, ventilating, air-conditioning, refrigerating, incinerating, compacting, fire, protection and sprinkler, surveillance and security, public address and communications equipment and systems, all awnings, floor coverings, partitions, elevators, escalators, motors, machinery, pipes, fittings and other items of equipment and personal property of every kind and description now or hereafter located on the Real Property or attached to the improvements which by the nature of their location thereon or attachment thereto are real property under applicable law; and including all materials intended for the construction, reconstruction, repair, replacement, alteration, addition or improvement of or to such buildings, equipment, fixtures, structures and improvements, all of which materials shall be deemed to be part of the Real Property immediately upon delivery thereof on the Real Property and to be part of the improvements immediately upon their incorporation therein (the foregoing being collectively the "**Improvements**"; and the Real Property with the Improvements thereon and Equipment as defined below therein and appurtenant rights thereto being collectively called the "**Property**");

B.    all estate, right, title and interest of the Mortgagor in, to, under or derived from all machinery, equipment, fixtures and accessions thereof and renewals and replacements thereof and substitutions therefor (including, but not limited to, chairs, tables, counters, furniture, cookware, drink dispensers, ice makers, electronic equipment, computers, security systems, heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air conditioning systems, grills, stoves, ranges, fryers, refrigerators, tools, machinery, engines, motors, boilers, incinerators, conduits, vacuum cleaning systems, electrical signs, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers, recreational items, windows or structural cleaning rigs), and other tangible property of every kind and nature whatsoever owned by the Mortgagor, or in which the Mortgagor has or shall have an interest, now or hereafter located upon the Real Property, or appurtenant thereto, or usable exclusively in connection with the present or future operation and occupancy of the Real Property or the Improvements (hereinafter collectively called the "**Equipment**");

4007641_1 DOC



BOOK 1837 PAGE 308

C.    all estate, right, title and interest of the Mortgagor in, to, under or derived from all tenements, hereditaments and appurtenances now or hereafter relating to the Real Property; the streets, roads, sidewalks and alleys abutting the Real Property; all air space and rights to use air space above the Real Property; all development, operating or similar rights appurtenant to the Real Property (including, without limitation, all rights arising from reciprocal access agreements, joint occupancy, use or development agreements, and parking agreements); all rights of ingress and egress now or hereafter appertaining to the Real Property; and all easements, licenses and rights of way now or hereafter appertaining to the Real Property;

D.    all estate, right, title and interest of the Mortgagor in, to, under or derived from all contract rights, chattel paper, instruments, general intangibles, computer hardware, software and intellectual property, accounts, guaranties and warranties, letters of credit, and documents, in each case relating to the Property or to the present or future operation or occupancy of the Property, and all plans, specifications, maps, surveys, studies, books of account, records, files, insurance policies, guarantees and warranties, all relating to the Property or to the present or future operation or occupancy of the Property, all architectural, engineering, construction and management contracts, all supply and service contracts for water, sanitary and storm sewer, drainage, electricity, steam, gas, telephone and other utilities relating to the Property and all other agreements affecting or relating to the use, enjoyment or occupancy of the Property;

E.    all estate, right, title and interest of the Mortgagor in, to, under and derived from all leases of or relating to the Property (together with all amendments, supplements, consolidations, replacements, restatements, extensions, renewals and other modifications of any thereof), if any, now or hereafter in effect, whether or not of record (the "**Leases**"); and the right to bring actions and proceedings under the Leases or for the enforcement thereof and to do anything which the Mortgagor or any lessor is or may become entitled to do under the Leases;

F.    all estate, right, title and interest of the Mortgagor in, to, under or derived from all rents, royalties, issues, profits, receipts, revenue, income, earnings and other benefits now or hereafter accruing with respect to all or any portion of the Real Property, including all rents and other sums now or hereafter payable pursuant to the Leases; all other sums now or hereafter payable with respect to the use, occupancy, management, operation or control of the Property; and all other claims, rights and remedies now or hereafter belonging or accruing with respect to the Real Property, including oil, gas and mineral royalties (collectively, "**Rents**");

G.    all estate, right, title and interest of the Mortgagor in, to, under or derived from all licenses, authorizations, certificates, variances, consents, approvals and extensions, improvements, betterment, renewal substitutions and replacements of, and additions and appurtenances to, any of the Real Property hereafter acquired by or released to the Mortgagor or constructed or located on, or attached to, the Real Property;

H.    all estate, right, title and interest of the Mortgagor in, to, under or derived from all proceeds of any sale, transfer, taking by condensation (or any proceeding or purchase in lieu thereof), financing, refinancing or a conversion into cash or liquidated claims, whether voluntary or involuntary, of any of the Property, including all insurance proceeds and awards and title insurance proceeds under any title insurance policy now or hereafter held by the Mortgagor,

4007641_1.DOC

CONTINUED

BOOK 1837 PAGE 310

(a)    Notes.  The indebtedness evidenced by and payable according to the terms of the Notes.

(b)    Other Indebtedness.  All indebtedness incurred or arising pursuant to the provisions of this Mortgage and/or any other Loan Document.

(c)    Future Indebtedness.  All extensions or renewals of all indebtedness described in Section 1.1(a) and Section 1.1(b) above, and all loans and advances that the Bank may hereafter make to Mortgagor or IDCPE and all other and additional debts, obligations and liabilities of every kind and character of Mortgagor or IDCPE, now or hereafter existing in favor of the Bank, regardless of whether such debts, obligations or liabilities are direct or indirect, primary or secondary, joint, several, fixed or contingent, and irrespective of the manner in which same may be incurred and regardless of whether such present or future debts, obligations and liabilities may, prior to their acquisition by the Bank, are or have been payable to or in favor of, some other person or entity, or have been acquired by the Bank in a transaction with anyone other than Mortgagor of IDCPE, together with any and all renewals and extensions of such indebtedness, loans, advances, debts, obligations and liabilities, or any part thereof, and all interest, attorneys' fees, and other charges thereof, or incurred in connection therewith, it being contemplated by Mortgagor and the Bank that the Bank may from time to time make additional loans and future advances hereunder. Any additional loan or advance made hereunder may be made without notice to or without the consent of anyone bound by this Mortgage, other than the person or party to whom the advance or loan is made, but nothing contained herein shall impose upon the Bank the duty or obligation to make any additional loan or advance.

1.2    Payment of Indebtedness.  Mortgagor will duly and punctually pay or cause to be paid the indebtedness described in this Article I, including each and every obligation owing on account of the Notes, in accordance with the terms of the Loan Agreement, the Loan Assumption Agreement, and the Notes.

## ARTICLE II.

## REPRESENTATIONS AND WARRANTIES

Mortgagor represents and warrants to the Bank as follows:

2.1    Existence and Power.  Mortgagor is a validly existing limited liability company in good standing under Oklahoma law.  Mortgagor has adequate power, authority and legal right to own, operate and possess the Mortgaged Properties, and to grant, sell, transfer and mortgage, and grant a security interest in, the Mortgaged Properties.  Mortgagor is duly authorized, qualified and licensed under all applicable laws to carry on Mortgagor's business at the locations where Mortgagor conducts such business, and operate and own the Mortgaged Properties.  The execution, delivery and performance of this Mortgage by Mortgagor will not violate any applicable law, rule, regulation, ordinance, judgment or order, the provisions of Mortgagor's Articles of Organization or Operating Agreement, or any other agreement or instrument binding upon Mortgagor, or applicable to, affecting or covering the Mortgaged Properties.

2.2    Title.

6

CONTINUED

BOOK 1837 PAGE 309

and all rights, dividends and other claims of any kind whatsoever (including damage, secured, unsecured, priority and bankruptcy claims) now or hereafter relating to the Property, all of which the Mortgagor hereby irrevocably directs be paid to the Mortgagee to the extent provided hereunder, to be held, applied and disbursed as provided in the Loan Agreements;

I.      all inventory held or maintained at the Property, or otherwise used in the ownership or operation of the Property (including, without limitation, all food and paper inventory together with all additions and accessions thereto, replacements therefor, products thereof and documents therefor) (collectively, the "**Inventory**"); and

J.      all proceeds of any and all of the above items A. through I. (all such items A. through J. being sometimes referred to as the "**Collateral**").

TO HAVE AND TO HOLD the Mortgaged Properties unto the Bank, forever, to secure payment of the Secured Indebtedness as hereinafter described.

The expression "**Mortgagor's successors**," as used herein, shall mean each of Mortgagor's successors and assigns. Mortgagor hereby binds itself and Mortgagor's successors to warrant and forever defend, all and singular the Mortgaged Properties, unto the Bank, its successors, and to its and their assigns, forever, against every person and entity whomsoever now or hereafter claiming same or any part thereof.

For the considerations stated in this Mortgage, as respects that portion of the Mortgaged Properties that now or hereafter, consist of (i) equipment, general intangibles, accounts, instruments, documents, chattel paper, contract rights, inventory, fixtures, proceeds or products of collateral (as such terms are defined in the Uniform Commercial Code as in effect in the appropriate jurisdiction with respect to said properties, rights and interests) and/or (ii) any other personal property or fixture of a kind or character subject to the applicable provisions of the Uniform Commercial Code (as in effect in the appropriate jurisdiction with respect to each of said properties, rights and interests), Mortgagor hereby grants to the Bank a security interest in all such now owned or hereafter acquired properties, rights and interests to secure the payment of the "Secured Indebtedness" (as that term is defined in Section 1.1) and the performance of the obligations of Mortgagor and IDCPE contained in this Mortgage, the Loan Agreement, the Loan Assumption Agreement or in any other Loan Document.

Mortgagor, in consideration of the foregoing premises and to induce the Bank to make the loans described above, hereby covenants and agrees with the Bank as follows:

### ARTICLE I.

### INDEBTEDNESS SECURED

1.1    Secured Indebtedness. This Mortgage is given to secure Mortgagor's obligations under the Loan Agreement and the other Loan Documents, and all of the following indebtedness and all amendments, extensions, renewals, modifications, rearrangements or increases of any of the following indebtedness (the "**Secured Indebtedness**"):

4007641_1.DOC

CONTINUED

BOOK 1837 PAGE 311

(a)    (i) Mortgagor is the owner of a valid fee simple absolute interest in the Real Property and holds good and marketable title to the Improvements, free from liens, security interests, charges or other encumbrances other than the Permitted Exceptions; (ii) the Mortgagor is the owner of good and marketable title to the Equipment, the Inventory and the other personal property encumbered by this Mortgage, free and clear of all liens, security interests, charges or other encumbrances other than Permitted Exceptions; (iii) the Mortgagor has good and lawful right to mortgage the Property to the Bank without the consent of any person other than those consents which have been obtained; (iv) the lien created by this Mortgage constitutes a valid, binding and enforceable first priority lien on the Property, subject only to the Permitted Exceptions; and (v) the Permitted Exceptions do not materially interfere with or materially adversely affect the use, value or operation of the Property.

(b)    The Mortgagor shall (i) cause the representations and warranties in subsection (a) of this Section to continue to be true in each and every respect at all times prior to the termination of this Mortgage, and (ii) preserve, protect, warrant and defend (A) the estate, right, title and interest of the Mortgagor in and to the Property, (B) the validity, enforceability and priority of the lien of this Mortgage, and (C) the right, title and interest of the Bank and any purchaser at any sale of the Property hereunder or relating hereto, in each case against all other liens and claims whatsoever, subject only to the Permitted Exceptions.

(c)    Upon the recording of this Mortgage in the county recording office of the county in which the Real Property is located, the lien of this Mortgage shall be a perfected mortgage lien and fixture filing on the Property prior to all liens other than the Permitted Exceptions. Other than the Permitted Exceptions, there are no liens or encumbrances other than the lien of this Mortgage upon the Property or any portion thereof, and Mortgagor shall not grant or suffer to exist any other lien or encumbrance upon the Property without Bank's written approval.

(d)    The Mortgagor shall perform all acts that may be necessary to continue, maintain, preserve, protect and perfect the Property, the lien granted to the Bank herein and the perfected priority of such lien. Upon request by the Bank, the Mortgagor shall at its sole cost and expense (i) promptly correct any defect or error that may be discovered in this Mortgage or any financing statement or other document relating hereto, and (ii) promptly execute, acknowledge, deliver, record, and re-record, register and re-register, and file and re-file this Mortgage and any fixture filings, financing statements or other documents that the Bank may reasonably require from time to time (all in form and substance reasonably satisfactory to the Bank) in order (A) to effectuate, complete, perfect, continue or preserve the lien of this Mortgage on the Collateral, whether now owned or hereafter acquired, subject only, with respect to the Property, to the Permitted Exceptions, (B) to correct or change the name of the Mortgagor following any change in its identity, sale of the Property, or assumption of the loans pursuant to the Loans Agreements, or (C) to effectuate, complete, perfect, continue or preserve any right, power or privilege granted or intended to be granted to the Bank hereunder. The Bank is hereby irrevocably appointed the true and lawful attorney of the Mortgagor and any subsequent owner of the Property to take, in its own name or in the name of the Mortgagor or any subsequent owner of the Property, all such actions as the Bank may deem necessary. The Bank may execute all necessary documents, deeds and instruments to effectuate the provisions of this Section, the Mortgagor or any subsequent owner of the Property hereby ratifying and confirming all that their

7



BOOK 1837 PAGE 312

said attorney or such substitutes shall lawfully do by virtue hereof. Nevertheless, the Mortgagor or any subsequent owner of the Property, if so requested in writing by the Bank, shall ratify and confirm any such sale by executing and delivering to the Bank any document or instrument which, in the judgment of the Bank, is suitable or appropriate therefor.

2.3  <u>Compliance with Laws</u>. Mortgagor's ownership, use and operation of its assets and properties comply in all material respects with any and all applicable federal, state and local laws, statutes, rules, regulations, ordinances and orders.

## ARTICLE III.

## ADDITIONAL COVENANTS

Mortgagor further covenants and promises to the Bank as follows:

3.1  <u>Defense Against Claims</u>. If the validity or priority of this Mortgage, or of any rights, title, liens or interests created or evidenced hereby with respect to the Mortgaged Properties, or any part thereof, are endangered, questioned or attacked, directly or indirectly, or if any legal proceedings are instituted against Mortgagor in respect thereto, Mortgagor will give written notice thereof to the Bank and, at Mortgagor's own cost and expense, Mortgagor will diligently endeavor to cure any defects that may be developed or claimed and will take all necessary and proper steps for the defense of such legal proceedings, including, but not limited to, the employment of counsel, the prosecution or defense of litigation, and the release or discharge of all adverse claims. The Bank is hereby authorized and empowered to take such additional steps as in the Bank's judgment or discretion may be necessary or proper in the defense of such legal proceedings, including, but not limited to, the employment of independent counsel, the prosecution or defense of litigation, and the compromise or discharge of any adverse claims made with respect to the Mortgaged Properties. All expenses so incurred of every kind and character will be a demand obligation owing by Mortgagor and will bear interest from the date of expenditure until paid at the highest rate applicable under the Notes during the existence of a default (the "**Default Rate**"), and will be secured by the lien and security interest evidenced by this Mortgage. The party incurring such expense shall be subrogated to all rights of the person receiving such payment. The above and foregoing covenants will at all times be construed to be covenants for the benefit of the Bank and will remain in full force and effect, notwithstanding the assignment hereof or the payment of all the Secured Indebtedness and the release, either partially or wholly, of the lien hereof or any foreclosure thereof.

3.2  <u>Payment of Debt</u>. Mortgagor will make prompt payment of the Secured Indebtedness as the same becomes due.

3.3  <u>Sale, Encumbrance or Removal</u>. Mortgagor will not at any time during the existence of this Mortgage, without first obtaining the Bank's prior written consent, sell, assign, transfer, mortgage, encumber, or otherwise dispose of any of the Mortgaged Properties, except sales of Inventory in the ordinary course of business and only then in compliance with the terms of this Mortgage, or remove or permit to be removed, any personal or other removable property at any time covered hereby from the premises upon which the same may be situated, except in the ordinary course of business.

4007641_1.DOC

CONTINUED

BOOK 1837 PAGE 313

3.4    <u>Extensions and Substitutions</u>.  By agreement with the maker or makers of any instrument evidencing any indebtedness at any time secured hereby, the Bank, without notice to or consent of any other party to this Mortgage, may from time to time extend the time of payment of the whole or any part of the Secured Indebtedness, or may accept from said maker or makers one or more new instruments in the same or different form in renewal of or by way of substitution for any instrument of indebtedness without in any manner impairing or affecting the lien and security interest of this Mortgage or any of the Bank's rights hereunder.

3.5    <u>Preservation of Mortgaged Properties</u>.  Mortgagor will keep and maintain all Properties, or cause all Properties to be kept and maintained, in good repair and sufficient operating condition including the making of all necessary repairs, renewals, replacements, additions and improvements.  Mortgagor will not commit or suffer to be committed any waste of the Mortgaged Properties or permit any lien or encumbrance of any kind or character, except in favor of the Bank, to accrue or remain on the Mortgaged Properties or any part thereof.

3.6    <u>Operation</u>.  Mortgagor will operate the Mortgaged Properties, or will cause the Mortgaged Properties to be operated, in a good and workmanlike manner in accordance with all applicable laws, and the applicable provisions of the Leases.

3.7    <u>Compliance with Leases</u>.  Mortgagor will comply with all of the terms, covenants and provisions, express or implied, of the Leases, and perform all reasonable acts necessary or proper to prevent the termination or forfeiture of any Lease.  Except with the prior written consent of the Bank, Mortgagor will not amend any material provision of or terminate any of the Leases in whole or in part.

3.8    <u>Taxes</u>.  Mortgagor will pay, or cause to be paid, before delinquent, all taxes, assessments and other governmental charges of every kind and character now or hereafter levied, imposed or assessed against the Mortgaged Properties, or any party thereof, or which might become a lien thereon, including all such as may be incident to the operation, development or maintenance of said property.

3.9    <u>Debts</u>.  Mortgagor will pay or cause to be paid all debts and liabilities of Mortgagor of any character.

3.10    <u>Books and Records</u>.  Mortgagor will keep accurate books and records in accordance with sound accounting principles, in which full, true and correct entries shall be promptly made as to all operations on the Mortgaged Properties.  All such books and records will at all times during reasonable business hours be subject to inspection by the Bank and the Bank's representatives.  Whenever reasonably requested by the Bank, Mortgagor will make reports of operations in such form as the Bank prescribes, setting out full data as to production and revenues from the Mortgaged Properties.

3.11    <u>Indemnification</u>.  Mortgagor will indemnify and hold the Bank harmless from and against all claims, demands, liabilities and causes of action asserted against the Bank on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Mortgaged Properties, this Mortgage or any of the Secured Indebtedness, except for the Bank's willful misconduct or gross negligence.

9


CONTINUED

BOOK 1837 PAGE 314

3.12    Additional Documents.  Whenever requested by the Bank, Mortgagor will promptly execute and deliver or cause to be executed and delivered all such other and further instruments, documents or assurances and will promptly do or cause to be done all such other and further things as may by the Bank be deemed necessary, expedient or advisable in order to better and more fully preserve or vest in the Bank all rights, interests, powers, benefits, privileges and advantages conferred or intended to be conferred by this Mortgage, or by any other instrument delivered simultaneously or pursuant hereto.

3.13    Insurance.  Mortgagor shall maintain the types and policy amounts of insurance required by the Loan Agreement.

3.14    Condemnation Awards.  If at any time all or any portion of the Mortgaged Properties is taken or damaged under the power of eminent domain, the award received by condemnation proceedings for any property so taken or any payment received in lieu of such condemnation proceedings shall be paid directly to the Bank as agent for Mortgagor.  All or any portion of such award or payment, at the option of the Bank, will be applied to the Secured Indebtedness in payment of the last maturing installments of the Secured Indebtedness or will be paid over, wholly or in part, to Mortgagor for any purpose or object satisfactory to the Bank, provided that the Bank will not be obligated to see to the application of any amount paid over to Mortgagor.  Mortgagor, immediately upon obtaining knowledge of the institution of any proceedings or negotiations for the condemnation of the Mortgaged Properties, or any portion thereof, will notify the Bank of the pendency of such negotiations or proceedings.  The Bank may participate in any such negotiations or proceedings, and Mortgagor from time to time will execute and deliver to the Bank all instruments requested by the Bank to permit such participation.

3.15    Inspection; Management.  The Bank and any persons authorized by the Bank will have the right to enter and inspect the Mortgaged Properties at all reasonable times and upon reasonable notice to Borrower.  If at any time after default by Mortgagor in the performance of any of the terms, covenants or provisions of the Loan Agreement, this Mortgage, the Note or any other Loan Document, the management or maintenance of the Mortgaged Properties is determined by the Bank to be unsatisfactory, Mortgagor will employ, for the duration of such default, as managing agent of the Mortgaged Properties, any person from time to time reasonably designated or approved by the Bank.

3.16    Compliance by Other Owners.  Mortgagor shall take all reasonable action and exercise all rights and remedies that are available to Mortgagor to cause any and all of the Mortgaged Properties which are not operated by Mortgagor to comply with the covenants and agreements contained herein.

3.17    Optional Performance by the Bank.  If Mortgagor fails to perform any act or fails to take any action that such Mortgagor is required to perform or take hereunder or under any other Loan Document, or fails to pay any money that such Mortgagor is required to pay hereunder or under any other Loan Document, the Bank, in such Mortgagor's name or in the Bank's name, may perform (but will not be obligated to perform or cause to be performed) such act or take such action or pay such money.  Any expenses so incurred by the Bank and any money so paid by the Bank will be a demand obligation owing by Mortgagor, will bear interest from the date of making such payment until paid at the Default Rate, will be a part of the Secured Indebtedness and will be

10



BOOK 1837 PAGE 315

secured by this Mortgage and by any other instrument securing the Secured Indebtedness. The Bank, upon making such payment, will be subrogated to all of the rights of the Person receiving such payment.

3.18    Release of Mortgaged Properties. The Bank will not be required to release any of the Mortgaged Properties until all of the Secured Indebtedness has been paid in full. The Mortgaged Properties are hereby pledged to secure the total aggregate indebtedness and obligations of Mortgagor in favor of the Bank whether such indebtedness or obligations are now existing or hereafter incurred. On the occurrence of an Event of Default under the Loan Agreement or an event of default described in Article IV of this Mortgage, the Bank may look to the Mortgaged Properties as collateral security for such other indebtedness and proceed to exercise the Bank's rights to the remedies provided in the Loan Agreement or any other Loan Document, including, but not limited to, the remedies described in this Mortgage.

## ARTICLE IV.

### REMEDIES AND RELATED PROVISIONS

Upon the occurrence of an Event of Default (as defined in the Loan Agreement or the Loan Assumption Agreement) or any default, breach, or inaccuracy with respect to any covenant, agreement, representation or warranty of Mortgagor contained in this Mortgage, the Lender will have the option of declaring all of the Secured Indebtedness to be immediately due and payable, and the Lender will have any and all of the following remedies:

4.1    Repossession. The Bank may take possession of the Mortgaged Properties or any part thereof (Mortgagor agreeing to give immediate peaceable possession to the Bank or the Bank's designee) and collect and maintain, operate or control the same, and may apply all or any part of the income and proceeds to the payment of any development, operation or maintenance expense incident to any order of application as the Bank may elect; provided that in the event of any dispute or question whatsoever concerning such income and proceeds or the application thereof, the Bank may hold the same in a special account without interest until such dispute or question is finally settled to the Bank's satisfaction.

4.2    Judicial Foreclosure. The Bank may institute suit to foreclose the lien of this Mortgage in any court having jurisdiction. In any such suit, the Bank may, at the Bank's option, apply for and shall be entitled, as a matter of right, to the appointment of a receiver to take possession and control of, operate, maintain and preserve the Mortgaged Properties or any part thereof, and to apply the proceeds therefrom to the Secured Indebtedness until the Secured Indebtedness and all costs are fully paid; and the receiver may be authorized to sell or dispose of all or any part of the Mortgaged Properties under orders of the court appointing such receiver. In the event of any foreclosure sale conducted pursuant to judicial proceedings, the Mortgaged Properties or any part thereof may be sold with or without appraisement as the Bank may elect, and such election may be exercised at any time prior to the entry of the decree of foreclosure. If the Bank elects to have the Mortgaged Properties sold without appraisement, then Mortgagor hereby expressly waives appraisement. The Bank may elect to have the Mortgaged Properties sold together or in separate parcels, and Mortgagor waives any and all rights which Mortgagor may have to insist on sale of the Mortgaged Properties in one unit or in separate parcels. If the highest bidder at any

4007641_1 DOC

CONTINUED

BOOK 1837 PAGE 316

such sale becomes the purchaser, free of any right of Mortgagor to redeem or repurchase the Mortgaged Properties, the proceeds from such sale, after paying therefrom the costs advanced or incurred by the Bank in the foreclosure suit, including the costs of sale and any costs and expenses incurred in the operation of said property by a receiver appointed upon the application of the Bank, will be applied FIRST to the payment of all costs and expenses incurred by the Bank in the Bank's operation of the Mortgaged Properties, if the same are so operated, and to the payment of any and all sums advanced by the Bank for the purpose of protecting the security, together with accrued but unpaid interest thereon at the Default Rate; SECOND to the payment of the Secured Indebtedness and other sums then secured hereby, including interest and attorneys' fees, and THIRD to such other Persons in order of their priority as provided by law.

4.3     Power of Sale Foreclosure.  Mortgagor hereby confers on the Bank the power to sell the Mortgaged Property and the interests of persons therein in the manner provided for in the "Oklahoma Power of Sale Mortgage Foreclosure Act" (46 Okla. Stat. §§41 et seq.), as the same may be amended from time to time (the "Act"), or other applicable statutory authority.  Such power of sale shall be exercised by giving Mortgagor a notice of intent to foreclose by power of sale and setting forth, among other things, the nature of the breach(es) or default(s) and the action required to effect a cure thereof and the time period within which such cure may be effected all in compliance with and as may be required by the Act or other applicable statutory authority.  If no cure is effected within the applicable statutory time limits, Bank may accelerate the Secured Indebtedness without further notice (the aforementioned statutory cure period shall run concurrently with any contractual provision for notice and cure period before acceleration of the Secured Indebtedness) and may then proceed in the manner and subject to and as required by the conditions of the Act or other applicable statutory authority to serve upon Mortgagor and other necessary parties and publish a notice of sale and to then sell and convey all or any portion of the Mortgaged Properties all in accordance with the Act or other applicable statutory authority.  The sale shall be made as an entirety or in lots, parcels, or divisions, upon such notice, at such time and place, in such manner and under such conditions all as provided for in said Act or other applicable statutory authority.  The proceeds of the sale shall be applied in the manner provided for in the Act or other applicable statutory authority.  No action of the Bank based upon the provisions contained herein or contained in the Act, including, without limitation, the giving of the notice of intent to foreclose by power of sale or service of the notice of sale, shall constitute an election of remedies which would preclude the Bank from pursuing judicial foreclosure before or at any time after commencement of the power of sale foreclosure procedure.

4.4     Remedies Cumulative.  All remedies expressly provided for in this Mortgage are cumulative of any and all other remedies existing at law or in equity; and the Bank, in addition to the remedies herein provided, will be entitled to avail itself of all such other remedies as may now or hereafter exist at law or in equity for the collection of the Secured Indebtedness and for the enforcement of the covenants herein.  The foreclosure of the liens evidenced hereby and the resort to any remedy provided for hereunder or provided for by law or equity shall not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies.

4.5     Other Security.  The Bank may resort to any security given by this Mortgage or to any other security now existing or hereafter given to secure the payment of the Secured Indebtedness in whole or in part and in such portions and in such order as may seem best to the Bank, in the Bank's sole and uncontrolled discretion.  Any failure by the Bank to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof will not be deemed to be


CONTINUED

BOOK 1837 PAGE 317

a waiver of any of the terms and provisions hereof; and the Bank, notwithstanding any such failure, will have the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions of this Mortgage to be performed by Mortgagor. Neither Mortgagor nor any other Person now or hereafter obligated for the payment of the whole or any part of the Secured Indebtedness will be relieved of such obligation by reason of (i) the failure of the Bank to comply with any request of Mortgagor or of any other Person so obligated to take action to foreclose this Mortgage or otherwise enforce any of the provisions of this Mortgage or of any obligations secured by this Mortgage, (ii) the release, regardless of consideration, of the whole or any part of the security held for the Secured Indebtedness, (iii) any agreement or stipulation between any subsequent owner or owners of the Mortgaged Properties, or (iv) the Bank's extension, from time to time, of the time of payment or modification of the terms of the Mortgage without first having obtained the consent of Mortgagor or such other Person. In the latter event, Mortgagor and all such other Persons shall continue to be liable to make such payments according to the terms of any such agreement of extension or modification unless expressly released and discharged in writing by the Bank. Regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien on the Mortgaged Properties, the Bank may release the obligation of anyone at any time liable for any part of the Secured Indebtedness or any part of the security held for the Secured Indebtedness and may from time to time extend the time of payment or otherwise modify the terms of the Mortgage without, as to the security for the remainder thereof, in any way impairing or affecting the lien of this Mortgage or the priority of such lien over any subordinate lien, as security for the payment of the Secured Indebtedness. The holder of any subordinate lien will have no right to terminate any lease affecting the Mortgaged Properties, whether or not such lease is subordinate to this Mortgage.

## ARTICLE V.

### OTHER PROVISIONS

5.1    Security Interest. This Mortgage is intended to constitute a security agreement with respect to the Mortgaged Properties and is also intended to constitute a financing statement under the Oklahoma Uniform Commercial Code, and a fixture filing. This Mortgage shall cover all of the collateral described in this Mortgage and all proceeds of the collateral. This Mortgage is to be filed for record, among other places, in the real estate records of Logan County, Oklahoma and shall be effective as a financing statement covering fixtures located on the Real Property. A photographic or other reproduction of this instrument shall be sufficient as a financing statement. The following information is accordingly included:

      (a)    the name of Mortgagor (debtor) is Tuscany Energy, LLC;

      (b)    the name of the Bank is Benefit Bank;

      (c)    the address of the Bank (secured party) from which information may be obtained is P.O. Box 10750, Fort Smith, Arkansas 72917-0750;

      (d)    the mailing address of Mortgagor is 1314 E. Las Olas Boulevard, No. 224, Fort Lauderdale, Florida 33301;


CONTINUED

BOOK 1837 PAGE 318

(e)    a description of the Collateral is set forth in subparagraphs A. through J. inclusive following the granting clause beginning on page one of this Mortgage; and

(f)    a legal description of the real estate to which the Collateral is or may become fixed is set forth in Exhibit A hereto.

In addition to all other rights, powers, privileges and remedies, on the occurrence of one or more events of default as herein provided, or one or more Events of Default as provided in the Loan Agreement, the Bank shall be entitled to exercise all of the rights, powers, privileges and remedies available to a secured party upon default under the Oklahoma Uniform Commercial Code.

5.2    Waiver and Partial Release.  The Bank may at any time and from time to time in writing (i) waive compliance by Mortgagor with any covenant herein made by Mortgagor to the extent and in the manner specified in such writing, (ii) consent to Mortgagor doing any act that Mortgagor is prohibited from doing under this Mortgage, or (iii) consent to Mortgagor failing to do any act which Mortgagor are required to do hereunder to the extent and in the manner specified in such writing.  No such act will in any way impair the rights of the Bank hereunder, except to the extent specifically agreed to by the Bank in such writing.  The lien and other security rights of the Bank hereunder will not be impaired by any indulgence, including but not limited to (i) any renewal, extension or modification which the Bank may grant with respect to any of the Secured Indebtedness, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which the Bank may grant in respect of any item of the Mortgaged Properties or any part thereof or interest therein, and (iii) any release or indulgence granted to any endorser, guarantor or surety of any of the Secured Indebtedness.

5.3    Possession Until Default; Defeasance.  Unless an Event of Default (as defined in the Loan Agreement or the Loan Assumption Agreement) or any default, breach, or inaccuracy with respect to any covenant, agreement, representation or warranty of Mortgagor contained in this Mortgage has occurred and is continuing, Mortgagor will retain full possession of the Mortgaged Properties and will manage, operate, develop and use the same and every part thereof, subject, however, to the terms and provisions of this Mortgage.

5.4    Notices.  Any notices or other communications required or permitted hereunder shall be sufficiently given if (i) delivered personally, (ii) sent by registered or certified mail, postage prepaid, return receipt requested and addressed as listed below or to such other address as the party concerned may substitute by written notice to the other, or (iii) by facsimile transmission, provided however, the receipt by any party other than the Mortgagor and the Bank listed below shall not be deemed necessary in any event, for the effectiveness of any notice or other communication.  All notices shall be deemed received on the earlier to occur of three days (excluding Saturdays, Sundays and holidays recognized by national banking associations) after being mailed or upon actual receipt:

To Mortgagor:    Tuscany Energy, LLC
1314 E. Las Olas Boulevard, No. 224
Fort Lauderdale, Florida 33301
Attn: V. Ray Harlow

14

CONTINUED

BOOK 1837 PAGE 319

|  |  |
|---|---|
| To the Bank: | Benefit Bank |
|  | P.O. Box 10750 |
|  | Fort Smith, Arkansas 72917-0750 |
|  | Attn:    James Wiggins |
|  |  |
| With copy to: | Robert T. Luttrell, III, Esq. |
|  | Joshua D. Smith, Esq. |
|  | McAfee & Taft A Professional Corporation |
|  | 10th Floor, Two Leadership Square |
|  | 211 N. Robinson |
|  | Oklahoma City, OK  73102 |
|  | Fax:    (405) 235-0439 |

5.5     Binding Effect.    All terms, conditions, covenants, warranties and agreements contained herein shall be binding on Mortgagor and Mortgagor's successors and assigns and shall be deemed to be covenants running with the estate or in the land; and all said provisions shall likewise inure to the benefit of the Bank and the successors and assigns of the Bank.

5.6     Severability.  The invalidity of any provision or provisions hereof shall not in any way affect the remaining provisions of this Mortgage.

5.7     Counterparts.  This Mortgage is executed in numerous counterparts, all of which are identical and each of the counterparts shall be deemed an original and all counterparts together shall constitute one and the same instrument.

5.8     Construction.  This Mortgage and the documents issued hereunder will be deemed to be a contract made under Oklahoma law and will be construed in accordance with Oklahoma law. The descriptive headings of the paragraphs of this Mortgage are for convenience only and will not be used in the construction of the content of this Mortgage.

5.9     Controlling Provisions.    This Mortgage is subject in all aspects to the Loan Agreement.   If there is any direct conflict between any provision of this Mortgage and any provisions of the Loan Agreement, the provisions of the Loan Agreement shall control.  Capitalized terms used herein which are defined in the Loan Agreement shall have the same meaning provided therein when used in this Mortgage, unless otherwise defined in this Mortgage.  The agreements and waivers contained the Guaranty executed by the Mortgagor relating to the Assumed Loan are incorporated by reference herein as if fully set forth.

5.10     Arbitration.

a)     Any arbitration hereunder shall be before at least three neutral arbitrators associated with the American Arbitration Association and selected in accordance with the commercial arbitration rules of the American Arbitration Association.  Failure of any arbitrator to disclose all facts which might to an objective observer create a reasonable impression of the arbitrator's partiality, and/or material errors of law shall be grounds (in addition to all others) for vacatur of an award rendered pursuant to this Agreement.

15

4007641_1.DOC



BOOK 1837 PAGE 320

b)    The parties further agree that (i) no arbitration proceeding hereunder shall be certified as a class action or proceed as a class action, or on a basis involving claims brought in a purported representative capacity on behalf of the general public, other customers or potential customers or persons similarly situated and (ii) no arbitration proceeding hereunder shall be consolidated with, or joined in any way with, any other arbitration proceeding.

c)    This arbitration provision shall survive any termination, amendment, or expiration of the agreement in which this provision is contained, unless all of the parties otherwise expressly agree in writing.

d)    The parties acknowledge that this Agreement evidences a transaction involving interstate commerce. The Federal Arbitration Act shall govern the interpretation, enforcement, and proceedings pursuant to the arbitration clause of this Agreement.

e)    Any and all controversies between the parties submitted to arbitration, shall be resolved by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association in effect at the time of filing, unless the commercial arbitration rules conflict with this provision, and in such event the terms of this provision shall control to the extent of the conflict.

f)    The award of the arbitrators, or a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction. The arbitration award shall be in writing and specify the factual and legal basis for the award. Upon the request of any party, the award shall include findings of fact and conclusions of law.

g)    Arbitrable disputes include any and all controversies or claims between the parties of whatever type or manner, including without limitation, any claim arising out of or relating to this Agreement or the Loan Documents, all past, present and/or future credit facilities and/or agreements involving the parties, any transactions between or involving the parties, and/or any aspect of any past or present relationship of the parties, whether banking or otherwise, specifically including any alleged tort committed by any party.

h)    The parties shall allow and participate in discovery in accordance with the Federal Rules of Civil Procedure for a period of one hundred twenty (120) days after the filing of the original responsive pleading. Discovery may continue thereafter as agreed by the parties or as allowed by the arbitrators. Unresolved discovery disputes shall be brought to the attention of the arbitrators by written motion for proper disposition, including ruling on any asserted objections, privileges, and protective order requests and awarding reasonable attorney's fees to the prevailing party.

i)    In the event the aggregate of all affirmative claims asserted exceed $500,000.00, exclusive of interest and attorney's fees, or upon the written request of any party, (1) prior to the dissemination of a list of potential arbitrators, the American Arbitration Association shall conduct an in person administrative conference with the parties and their attorneys for the following purposes and for such additional purposes as the parties or the American Arbitration Association may deem appropriate, (A) to obtain additional information



BOOK 1837 PAGE 321

about the nature and magnitude of the dispute and the anticipated length of hearings and scheduling; (B) to discuss the view of the parties about any technical and/or other special qualifications of the arbitrators; and (C) to consider, whether mediation or other methods of dispute resolution might be appropriate, and (2) as promptly as practicable after the selection of the arbitrators, a preliminary hearing shall be held among the parties, their attorneys and the arbitrators.  With the agreement of the arbitrators and the parties, the preliminary hearing may be conducted by telephone conference call rather than in person.  At the preliminary hearing the matters that may be considered shall include, without limitation, a pre-hearing scheduling order addressing (A) each party's duty to submit a detailed statement of claims, damages and/or defenses, a statement of the issues asserted by each party and any legal authorities the parties may wish to bring to the attention of the arbitrators; (B) responses and/or replies to the pleadings filed in compliance with Subpart (A) of this sentence; (C) stipulations regarding any uncontested facts; (D) exchange and premarking of all documents which each party believes may be offered at the final arbitration hearing; (E) the identification and availability of witnesses, including experts, and such additional matters regarding witnesses including their biographies and a short summary of their expected testimony; (F) whether a stenographic or other official record of the proceedings shall be maintained; and (G) the possibility of utilizing mediation or other alternative methods of dispute resolution.

        j)     For purposes of this provision, "the parties" mean Mortgagor and Lender, and each and all persons and entities signing this Agreement or any other agreements between or among any of the parties as part of this transaction.  "The parties" shall also include individual partners, affiliates, officers, directors, employees, agents and/or representatives of any party to such documents, and shall include any other owner and holder of this Agreement.

        k)     The parties shall have the right to invoke self-help remedies (such as set off, notification of account debtors, seizure and/or foreclosure of collateral, and non judicial sale of personal property and real property collateral) before, during or after any arbitration and/or request ancillary or provisional judicial remedies (such as garnishment, attachment, specific performance, receiver, injunction or restraining order, and sequestration) before, during or after any arbitration.  The parties need not await the outcome of the arbitration before using self-help remedies.  Use of self-help or ancillary and/or provisional judicial remedies shall not operate as a waiver of either party's right to compel arbitration.  Any ancillary or provisional remedy which would be available from a court at law shall be available from the arbitrators, including injunction and restraining orders.

        l)     The parties agree that any action regarding any controversy between the parties shall either be brought by arbitration, as described herein, or by judicial proceedings, but shall not be pursued simultaneously in different or alternative forms.  A timely written notice of intent to arbitrate pursuant to this Agreement stays and/or abates any and all action in a trial court, save and except a hearing on a motion to compel arbitration and/or the entry of an order compelling arbitration and staying and/or abating the litigation pending the filing of the final award of the arbitrators.  All reasonable and necessary attorney's fees and all travel costs shall be awarded to the prevailing party on any motion to compel arbitration and must be paid to such party within ten (10) days of the signing of the order compelling arbitration.

4007641_1.DOC

CONTINUED

BOOK 1837 PAGE 322

m)    Any party seeking to arbitrate shall serve a written notice of intent to arbitrate to any and all opposing parties within 360 days after dispute has arisen. A dispute is defined to have arisen only upon receipt of service of judicial process, including service of a counterclaim. Failure to serve a written notice of intent to arbitrate within the time specified above shall be deemed a waiver of the aggrieved party's right to compel arbitration of such claim. The issue of waiver pursuant to this Agreement is an arbitrable dispute.

n)    Active participation in pending litigation during the 360-day notice period, whether as plaintiff or defendant, is not a waiver of the right to compel arbitration. All discovery obtained in the pending litigation may be used in any subsequent arbitration proceeding.

o)    Any arbitrator selected shall be knowledgeable in the subject matter of the dispute. Each of the parties shall pay an equal share of the arbitration costs, fees, expenses, and of the arbitrators' fees, costs and expenses, unless the arbitrators otherwise award fees, costs and expenses to a party.

p)    All statutes of limitations which would otherwise be applicable shall apply to any and all claims asserted in any arbitration proceeding hereunder and the commencement of any arbitration proceeding tolls such statutes of limitations.

q)    In any arbitration proceeding subject to this provision, the arbitrators, or majority of them, are specifically empowered to decide (by documents only, or with a hearing, at the arbitrators' sole discretion) pre-hearing motions which are substantially similar to pre-hearing motions to dismiss and motions for summary adjudication.

r)    This arbitration provision shall survive any termination, amendment, or expiration of the agreement in which this provision is contained, unless all of the parties otherwise expressly agree in writing.

s)    The arbitrators, or a majority of them, shall award attorney's fees and costs to the prevailing party pursuant to the terms of this Agreement.

t)    Neither the parties nor the arbitrators may disclose the existence, content, or results of any arbitration hereunder without prior written consent of all parties and/or court order.

u)    Venue of any arbitration proceeding hereunder shall be in Fort Smith, Arkansas.

4007641_1.DOC

18



BOOK 1837 PAGE 323

IN WITNESS WHEREOF, this Mortgage has been executed and delivered as of the date first above written.

TUSCANY ENERGY, LLC

By: _____
Name: _V. RAY HARLOW_
Title: _MANAGING MEMBER_

**BENEFIT BANK**

By: _____
James Wiggins, Regional President

4007641_1.DOC

CONTINUED

BOOK 1837 PAGE 324

IN WITNESS WHEREOF, this Mortgage has been executed and delivered as of the date first above written.

**TUSCANY ENERGY, LLC**

By: _____
    Name: _____
    Title: _____

**BENEFIT BANK**

By: _____
    James Wiggins, Regional President

4007641_1.DOC

CONTINUED

STATE OF _Florida_ )
                      ) ss:
COUNTY OF _Broward_ )

BOOK **1837** PAGE **325**

V. _Ray Harlow_ This instrument was acknowledged before me on _Jan 30_ _____, 2009, by
_____, as _Manager/Nest_ of Tuscany Energy, LLC.

(Seal)

_____
Notary Public
My Commission Expires: _____
Commission No.: _____

> Notary Public State of Florida
> Yvonne Perez Nordseth
> My Commission DD672923
> Expires 07/06/2011

STATE OF _____ )
                        ) ss:
COUNTY OF _____ )

This instrument was acknowledged before me on _____, 2009, by James
Wiggins, as Regional President of Benefit Bank.

(Seal)

_____
Notary Public
My Commission Expires:_____
Commission No.:_____

4007641_1.DOC

20

CONTINUED